## JOHN S. BROWN

*v.*

## ARCHIBALD C. LECKIE *et al.*

1.  CHECK — *certified good.* The certifying a check " good," produces no other effect than to give it additional currency by carrying with it the evidence that it is drawn in good faith and its payment will be met, and by lending to it the credit of the drawee in addition to that of the drawer. Beyond this it does not differ from an uncertified check.

2.  SAME — *effect of drawing check on fund.* Where a depositor draws his check on his banker who has his funds to an equal or greater amount, it operates to transfer the sum named in the check to the payee, who might sue for and recover the amount from the banker. And a transfer of the check carries with it the title to the sum named in the check to each successive holder.

3.  SAME. Although certified checks pass from hand to hand as money, as cash, still they are not cash, or currency, in the legal sense of that term, and do not lose the characteristics of bills of exchange, and when dishonored, the holder has a right to look to the drawer for payment. As the acceptance of a bill does not discharge the drawer, so neither does the acceptance of a check, manifested by the word " good" placed upon it by the drawer, discharge the drawer. According to authority they rest on the same principles, and in this respect there is no difference.

32 — 43D ILL.

43   497
37a  480
43   497
137  642
43   497
42a  289
43   497
159  469
43   497
.158  539
43   497
72a  317
43   497
181  283
85a  296
43   497
103a  ²336
43   497
202  517

4. Check — *certified good — drawer charged with the amount.* It can make no difference if the drawer is charged with the amount of the check, when the drawee indorses it "good." According to general usage the banker expects to pay the check out of the funds of the drawer in his hands, and makes a memorandum, or takes some other course by which he will not permit the amount necessary to meet it to be anticipated, and this is understood by the drawer and the payee. It therefore does not matter whether it is actually charged up at the time, as in either case the funds pass from the control of the drawer.

5. Same — *set-off by banker.* A banker can not set off a demand he holds against the person presenting a check for payment. When a check is received in the usual course of business, it is not presumed to be received in payment, but rather as a means to procure payment. The holder becomes the agent to collect the money of the drawer, and if not guilty of negligence that injures the drawer, the holder will not be answerable if the banker refuses payment. In a suit against the drawer, the holder may treat it as a nullity, and resort to the original cause of action. To hold otherwise would greatly embarrass the business of the commercial world.

Appeal from the Superior Court of Chicago; the Hon. Joseph E. Gary, Judge, presiding.

This was an action of assumpsit brought by Archibald Leckie, George H. Sellers and William A. Leckie, partners, under the name and style of Leckie, Sellers & Co., in the Superior Court of Chicago, against John S. Brown, to recover the amount of a check for $3,380.24, drawn by defendant, in favor of plaintiffs, on Solomon Sturgis' Sons.

The declaration contained two special counts on the check, and the common counts. Defendant pleaded the general issue.

The cause was tried before the court and a jury, at the December Term, 1866. After hearing the evidence, the jury found a verdict in favor of the plaintiffs for 3,474.80. Defendant thereupon entered a motion for a new trial, which was overruled by the court, and judgment was rendered upon the verdict; and he brings the case to this court by appeal. He assigns errors: that the verdict is against the law and the evidence; that the court erred in excluding evidence, in overruling the motion for a new trial, and in rendering judgment.

Messrs. WALKER & DEXTER, for the appellant.

Mr. O. B. SANSUM, for the appellees.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by appellees in the Superior Court of Chicago, against appellant, on this check:

"CHICAGO, July 7, 1866.
"SOLOMON STURGIS' SONS:
"Pay to Leckie, Sellers & Co., thirty-three hundred, eighty and 24–100 dollars.
"$3,380.24.                         J. S. BROWN & CO."

It was certified across its face, " Good, S. Sturgis' Sons." It appeared on the trial, that about the date of the check, appellees sold to appellant a quantity of high-wines, and in payment thereof he gave this check, certified as good, by the drawees. A short time subsequently, appellees presented the check for payment, which Solomon Sturgis' Sons refused to make in money, but offered to place it to their credit, who were at the time indebted to them, as they claimed.

This appellees refused to allow, and demanded the money on the check. They thereupon returned the check to appellant, and demanded the money or another check, which was refused.

Before the check was received by appellees, and at the time it was certified to be good, the amount called for in the check was charged to appellant's account with Solomon Sturgis' Sons.

On the trial, appellant offered to prove that when the check was presented to Solomon Sturgis' Sons, appellees were indebted to them in a sum larger than the amount of the check, and that they, as drawees, offered to credit the check upon appellees' account. But the court below refused to permit him to introduce such evidence, to which appellant excepted. The jury found a verdict in favor of appellees, for the amount of the check and interest.

No question is made, in this case, as to the presentment and notice of non-payment; and these questions do not arise on this record. We will therefore proceed to the consideration of those which are presented.

In the cases of *Rounds* v. *Smith*, and *Bickford* v. *The First National Bank*, 42 Ill. 238, the question was presented as to the effect of certifying a check "good." It was held, that its only effect was to give it additional currency, by carrying with it the evidence that it was drawn in good faith, on funds to meet its payment, and lending to it the credit of the drawee, in addition to the credit of the drawer. That beyond this, it did not differ from an uncertified check. In those cases, however, the amount of the check was not charged up to the drawer. In that respect, this case differs from those.

In those cases, it was held, as it had been in the case of *Munn* v. *Burch*, 25 Ill. 35, that when a depositor draws his check on his banker, who has his funds to an equal or greater sum than his check, it operates to transfer the sum named to the payee, who might sue for and recover the amount from the banker, and that a transfer of the check carried with it the title to the amount named in the check, to each successive holder. In the case of *Bickford* v. *The First National Bank*, it was held, that, although certified checks pass from hand to hand as cash, still they are not cash, or currency, in the legal sense of these terms, and they do not lose, on that account, any of the characteristics of bills of exchange, and, therefore, when dishonored, the holder has a right to look to the drawer for payment; and *Munn* v. *Burch* is referred to in support of this doctrine: that, as the acceptance of a bill of exchange does not discharge the drawer, if protested for non-payment, so, neither should the acceptance of a check, manifested by the word "good" placed upon it by the bank, discharge the drawer; that, according to the weight of authority, they seem to rest on the same principle. In this respect, there can be no difference between an uncertified and a certified check, the dishonor of either, on well settled principles, must make the drawer liable.

According to the principles announced in this case, it can

make no difference whether the drawer is actually charged on the books of the drawee or not, with the amount of the check, when it is indorsed "good." According to general usage, the banker, when he makes such an indorsement, expects to pay the check out of the drawer's funds in his hands, and makes some memorandum, or takes some other course, by which he will not permit the amount necessary to meet the check to be anticipated; and this, both the drawer and payee understand. So, it will be seen, that the practical effect of certifying a check is the same, whether the drawer is actually charged on the books or not, as in either case, that amount of his funds is withdrawn from his control until the payment of the check is refused.

The remaining question is, whether the banker, upon whom the certified check was drawn, may, when it is presented, set off the indebtedness of the holder, against the check. In the case of *Cromwell* v. *Wing*, 1 Hall (N. Y.) 56, it was held, that a check on a banker, given in the ordinary course of business, is not presumed to be received as an absolute payment, even if the drawer have funds in the bank, but as the means to procure the money. The holder, in such a case, becomes the agent of the drawer to collect the money; and, if guilty of no negligence whereby an actual injury is sustained by the drawer, he will not be answerable, if, from any peculiar circumstances attending the bank, the check is not paid. And in a suit against the drawer for the consideration of such a check, the holder may treat it as a nullity, and resort to the original cause of action.

When it is remembered, that almost all of the vast sums of money employed in carrying on the commerce of the world, is paid out by means of checks, which are not received as payment by the creditor or vendor, but simply as the means, and the *usual* means, of obtaining his money, it is but reasonable to regard the holder of the check as an agent of the drawer. Again, vast amounts of property are sold by agents, brokers, and commission men, for the benefit of their principals, and it would be unreasonable and unjust, when they received a check as the means of procuring the money of their principals, to

permit bankers to set off any demand they might have against such a holder. If the holder is only treated as the agent of the drawer, it would be manifestly wrong to permit the banker to set off this debt of the agent, against the debt he owes to the drawer. Not only so, but it would be in violation of all the rules relating to set-off.

It is true, in this case there was no plea of set-off interposed, nor do counsel call it set-off, but it could be nothing else. Even if it had constituted a defense, to have availed of it appellant should have pleaded it. In no view that we can take of this case, do we see that appellant presented any defense in the court below. Nor do we discover any error in this record. The judgment of the court below must, therefore, be affirmed.

*Judgment affirmed.*