## No. 69.

## LOUISIANA ICE COMPANY *v.* STATE NATIONAL BANK OF NEW ORLEANS.

1. The certification of a check by the bank on which it is drawn, is equivalent to an acceptance. Such a check stands upon the same footing as an accepted bill of exchange.
2. There is a privity between a bank certifying a check, negotiable in form, and every holder thereof up to the time of its extinguishment. The bank may be sued by any such holder.
3. When a bank receives on deposit checks, promissory notes or similar paper, the contract is usually one of deposit for collection only. Title is not divested from the depositor and vested in the bank.
4. Even where the bank permits its depositor to draw against such checks, the credit is only conditional, and the absolute title of the latter is not thereby divested.
5. In such a case, where the depositor has not drawn against such deposited paper, he can, at any time before collection, revoke the agency of the bank and reclaim the deposit.
6. Where the principal applies to a court of justice to enjoin his agent from further acting under the power, this is a revocation of the agency.
7. Any person who is aware of the issuance of such an injunction, or of an application therefor, is charged with notice of the revocation.

8. Parties in their pleadings are not required to describe a thing so minutely as to furnish a detailed statement of every one of its peculiarities. It is sufficient, if by the aid of what it recited, the thing may be easily and certainly identified.

9. Persons cannot, by wilfully closing their eyes to marks of identification in themselves sufficient, decline notice, because other particulars are not furnished which might have been more satisfactory to them.

10. The depositors of banks which have formed themselves into a clearing house, are not bound by the rules and regulations or usages of the latter.

11. They are entitled to expect certain results, and the means which the banks adopt to secure the same are a portion of the internal administration of such institutions, in which the depositors have no voice or concern.

12. U. S. Rev. Stats. Sec. 5228, does not apply to a case like this. It does not make property belonging to others, found in the custody of a national bank at the time of its suspension, under contracts other than special deposit, liable for the debts of the bank.

*Appeal from Fifth District Court.    Cullom, Judge.*

*E. E. Moise* for plaintiff.

*Jas. McConnell* for defendant, appellant.

McGLOIN, J.—Plaintiff was a depositor in the New Orleans National Bank, and as such, upon October 4th, 1873, deposited after banking hours in said bank, two checks, one upon the the defendant bank for $1000, and the other upon the Teutonia Bank of this city. The former was certified by defendant, and was drawn by the New Orleans Mutual Insurance Company to the order of Sam Averrons, and by him endorsed in blank. When deposited, it was endorsed for deposit by D. Pochelu, as Vice-President for the plaintiff company. Upon that day the New Orleans National Bank suspended. It had been a member of the New Orleans Clearing House, the various banks composing which had been in the habit of exchanging checks every morning at the counting house of the institution, as is customary with clearing houses.

Pochelu, the Vice-President of the Ice Company, hearing of the suspension, repaired early next morning to the New Or-

leans Banking Company, which still held the check in question, and, finding that it had not yet passed through the Clearing House, demanded its return, and informed the cashier of the institution that he was about to issue an injunction restraining the exchange.

The said vice-president did repair to the late Superior District Court, and obtained a writ of injunction directed against the Clearing House and against the New Orleans National Bank, restraining them from passing said check. The description of this instrument in the writ is as follows:

" A check for the sum of one thousand dollars, drawn on the State National Bank, and endorsed for deposit by D. Pochelu, vice-president of the Louisiana Ice Manufacturing Company, said check now in the possession of the New Orleans Banking Association."

This writ was duly served upon the Clearing House before the usual hour of exchange, and as it was being so served, the cashier of the defendant bank was present, inspected and read the writ. He, sworn as a witness, claims that he " did not know what check it was. It was not described."

The New Orleans Banking Company, in consequence of its suspension, did not appear upon that day, as usual, at the Clearing House, and the manager of that institution advised the other banks to make their exchanges direct with the suspended bank. This the cashier of the defendant bank did, after Pochelu had demanded the check of the New Orleans National Bank, and after he, said cashier, had inspected the plaintiff's writ of injunction. The State National Bank thus received the check in question, with others drawn upon itself, surrendering for them various checks upon the New Orleans National Bank, which, by the failure of the latter institution, were then either worthless or very much depreciated. Plaintiff sues for damages, alleging the loss of said check, or its proceeds, by reason of said actions of defendant.

The demand is sought to be met, by the following defenses:

1st. That there was no privity between plaintiff and de-

fendant, and hence, no cause of action lies in favor of the former against the latter. McWilliams *v.* Hagan, 4 Rob. 375; McCulloch *v.* Commercial Bank, 16 La. 566; and Oakey *v.* Bank of Louisiana, 17 L. 386, are cited.

2d.   That by the deposit of this check and the placing of its amount upon the pass-book to the credit of plaintiff, the check became the property of the New Orleans National Bank, and plaintiff lost the right to control or recall it.

3d.   That in making said deposit the rules and usages of the Clearing House became applicable, and that the obligation of the bank was not to collect in cash, but by exchange of checks with the drawer, as customary.

4th.   That not having made the defendant party to its injunction, the plaintiff cannot thereby affect it in any manner.

5th.   That under the terms of the National Banking Act, after the failure of the New Orleans National Bank, the assets of the bank had to remain in *statu quo*, and were the common pledge of all the creditors, the law allowing only special deposits to be withdrawn. 100 U. S. 699, 703; U. S. Rev. Stats. Sec. 5228; Morse on Banking, § § 516, 517, 518; Venango National Bank *v.* Taylor, 56 Penn. St. 14.

I.

The check in this case was certified by the defendant bank. It is now well settled that certification is equivalent to acceptance, and that a check certified stands upon the same footing as an accepted bill of exchange. Merchants' Bank *v.* State Bank, 10 Wallace, 604; Beekford *v.* Bank, 42 Ill. 238; Rounds *v.* Smith, 42 Ill. 245; Meads *v.* Merchants' Bank, 25 N. Y. 143; Brown *v.* Leckie, 43 Ill. 497; Barnett vs. Smith, 30 N. H. (10 Fost.) 256; Farmers' and M. Bank *v.* Butchers' and Drovers' Bank, 16 N. Y. 125.

A party who accepts negotiable paper endorsed in blank, binds himself unconditionally to pay whatever person may be its holder at maturity.   There is a privity between such acceptor and all owners of such paper previous to the time of its extinguishment.   Therefore, by reason of the certification,

the State National Bank assumed the obligation of paying this check to the plaintiff as a *bona fide* holder thereof, and a privity did exist. Morse on Banking, Ed. 1879, pp. 310, 313, 322. None of the authorities cited by defendant, in any manner, controvert this proposition.

## II.

The check in this case was deposited as usual, the amount thereof being entered upon the pass-book of plaintiff. Whether it was entered upon the books of the bank does not appear.

If, by reason of this entry alone, and without anything being drawn by plaintiff against the same, this check became the property of the bank, and the Louisiana Ice Company lost all title thereto, then, perhaps, there would be no cause of action. The evidence, however, does not show that such transfer of ownership was contemplated or affected either by stipulation or usage. On the contrary, Blache, the cashier of the New Orleans National Bank, and Dupuy, cashier of the State National Bank, both testify that the latter bank had no pecuniary interest in the checks the latter bank held and exchanged, its obligation being only to collect with due diligence for its depositors. Speaking of these checks, Dupuy says, that if they had not been paid they would have been handed back to the depositors, the bank not having a cent's worth of pecuniary interest in the matter.

Checks, like drafts, bills, or notes, so deposited with a bank, are placed for collection, and not sold, exchanged, or otherwise made the subject of a contract calculated to transfer title. It is hard to imagine any advantage which could exist, calculated to induce a bank to assume ownership and responsibility for such paper. The fact that, owing to the short course such paper has to run, these institutions usually permit their customers to draw against the amount of checks deposited, does not, of itself, alter the relations between the parties. The credit is only conditional, and may be cancelled, and the check returned, should the latter be dishonored. The depositor remains owner of the paper, and the bank merely the agent.

Morse on Banks and Banking, Ed. 1879, pp. 427, 428; Scott *v.* Ocean Bank, 23 N. Y. 289; Giles *v.* Perkins, 9 East. 12; National Gold Bank *v.* McDonald, 51 Cal. 64.

It follows, that if plaintiff remained the owner of this check, and the New Orleans National Bank merely the collecting agent, that the former had the right to control the paper, at least so long as the bank had acquired no rights thereupon by reason of plaintiffs having drawn against the provisional credit. It had the right, at any time, to revoke the mandate and reclaim its property. This the Louisiana Ice Company did previous to the exchange of checks complained of. The refusal of the New Orleans National Bank to return this check upon demand of its owner, and its subsequent surrender thereof, despite the contrary instructions of the plaintiff to the debtor bank, for its own worthless paper, was a flagrant violalation of the principles of justice, in which the defendant bank was a participator.

The question, whether the State National Bank, in a case such as this, was bound by such revocation, without notice, does not arise. There can be no more emphatic revocation of agency than where the principal invokes the interference of a court of justice to prevent his mandatory from continuing in the performance of the duties which had devolved upon him under the procuration. The fact that such an injunction had issued, came to the knowledge of the defendant through its cashier, the very officer who subsequently, for the corporation he represented, effected the exchange.

The excuse that he was unable to identify the check is untenable. The writ of injunction in this instance does not, it is true, set out the check at large, but it does furnish indications, whereby it might have been easily identified. It gave the amount, the name of the bank that held it, and of that upon which it was drawn, and a description of the most prominent endorsement upon it. Parties in their pleadings are not held to descriptions so very minute, as to furnish a full recitation of every separate and particular characteristic of the property

they demand. It is sufficient if, by the aid of what they do recite, the property may be easily and certainly identified. It so happens, that in this case, amongst the list of checks taken by defendant, by virtue of this exchange, this particular check was the only one for said amount of one thousand dollars. Nor was there any besides it with the endorsement thereon described in the writ. It was the duty of the cashier of the defendant bank to have examined these checks, when he took them, in order to ascertain if any one of them was covered by the description in the writ, for he was charged with notice that, as to that particular check, the agency of the New Orleans National Bank was at an end. He could not, by willfully or carelessly closing his eyes to marks of identification, in themselves amply sufficient, ignore the revocation, simply because other particulars were not furnished which, in his opinion, would have been more satisfactory or precise.

### III.

We cannot accede to this proposition of defendant. Clearing Houses are associations formed between banks, in order to expedite and facilitate the transaction of business between themselves. The same reasons which impel banking companies to engage the services of cashiers, tellers, book-keepers and other subordinate officials, impels them to join together in the creation of clearing houses. Those who deal with banks are entitled to the execution of their contracts, or the performance of such services as they are entitled to either by stipulation or valid usage. With the machinery the banks may choose to employ, for the purpose of fulfilling their obligations, customers have nothing whatever to do. So that that for which they have contracted is duly performed, whether it be accomplished by one means or another, is no concern of theirs. The rules and methods observed by such institutions are adopted for their own individual safety or convenience, and they are alone entitled to the advantages accruing, and alone assume the risks and responsibility arising therefrom. To hold differently, would be to charge outsiders with every

custom adopted by banks in the internal management of their affairs; and it might give to such persons the right to complain of their abrogation or modification, and so the public might exercise a certain control which, to say the least, would be, to such institutions, most inconvenient.  Grant on Banks and Banking, (Ed. 1879), p. 452; Overman *v.* Hoboken City Bank, 1 Vroom, 61; 2 Vroom, 563.

In this case, the obligation of the New Orleans National Bank was to collect this check in cash.  If this purpose could be practically accomplished through the Clearing House, or by the runner, or by exchange, then the depositor, not being injured, could not complain.  But, if by the intervention of the usages or rules of the Clearing House a result was accomplished entirely different, and the check was not paid in cash, or what was its equivalent, the depositor is not bound, because it is with results alone, and not with the means, that he is chargeable or concerned.

But, even were we to hold the plaintiff bound by the rules and usages of the Clearing House, it would be secure, for its writ was directed against that institution and served in time to prevent the exchange, had it been attempted, according to the customary method.  So, on the other hand, plaintiff, if himself bound, had the right to hold defendant as well strictly to these rules, and to complain of an exchange which was not made through the Clearing House at all, but contrary to its rules and usages between the banks direct.  It would have the right to say, this check was deposited to pass through the Clearing House, and that was a tacit understanding, forming part of the contract, and in ample time, the exchange, in that way, was enjoined, and the rights acquired by such injunction could not be defeated by an exchange whose accomplishment was owing entirely to the abandonment and repudiation of these very rules and usages.

## IV.

Whether the State National Bank was bound to respect a writ of injunction which it knew to be in existence, even

though not directed individually against it, but against an association which was its agent, for the very purposes affected by the writ, is not necessarily a question in this case. We hold, that the agency of the New Orleans National Bank to collect this check was revoked by this writ and before the exchange, and that the defendant is chargeable with notice thereof. This is sufficient, and we, therefore, abstain from the determination of this particular proposition.

## V.

The statutes and authorities cited by defendant relate exclusively to the *assets* of National Banks which fail or suspend. Holding that this check was the property of plaintiff, it results that it was not an asset of the New Orleans National Bank, and so, was not to be disposed of for the benefit of its creditors. The law and authorities cited do not declare that what is indisputably the property of another, although the bank may not hold it by virtue of a contract of special deposit, but by virtue of a loan, hiring, or as agent, must pass to the creditors of the bank. If the law were such it would be unconstitutional, null and void, as authorizing what would be an absolute spoliation.

The court *a qua* found for plaintiff, and the judgment is affirmed.

Rehearing refused.