JOHN MCALLISTER

v.

OBERNE, HOSICK & Co.

*Negotiable Instruments—Checks—Consideration—Gaming.*

1.    A bank check in this State transfers the money of the drawer in the bank to the drawee, the moment the check is delivered, and from that moment it ceases to be the property of the drawer and belongs to the drawee or his assignee.

2.    The payee of checks drawn upon the funds of a firm, by its agent, authorized to so draw in business matters, must be held to have received such firm's money on a gambling debt, where the checks were given to cover the losses of such agent through gaming.

3.    In an action brought by a firm to recover for money lost at gaming by one of its employes, this court holds that defendant can not be allowed credit for any payment made by such agent on account of such transactions, or because the agent won a sum from him, and affirms the judgment for the plaintiffs.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Messrs. SHEEN & LOVETT, for appellant.

Messrs. McCULLOCH & McCULLOCH, for appellees.

LACEY, P. J.    This suit, in many respects in its facts, is like that of these same appellees v. Bunn, 39 Ill. App. 122.    This suit, like the one above named, was brought to recover for money lost by one Weider, the agent and salesman of the appellees in the hide and pelt business, carried on by such agent in the city of Peoria, the appellees residing and having their main house in the city of Chicago.

The business was carried on in Peoria under the name of Oberne, Hosick & Co.    Weider was their sole and general agent at Peoria, drew drafts on appellees at Chicago, and deposited the money in a bank in Peoria, and in this way their moneys were transferred to Peoria, to be used in the transactions of their own business, and to be drawn out by Weider upon checks drawn by him in their name.    Weider never had any business transactions with the appellant for the appellees in a legitimate way, but drew the checks, which are the foundation of this action, to the order of the appellant, to the full amount of the recovery in this case.    These checks were firm checks, drawn in the firm name by Weider, and were paid at the Peoria bank out of appellees' funds and the amount charged against appellees.    Their checks were either cashed to appellant himself, or to his indorser, as his name was on them as indorser.    The way the checks came to be issued, Weider and others were playing a game of cards called poker in Stacy Hart's room, and Weider would put up his check for chips, and then, whenever the game was over, he would take out those checks and issue a check to whomsoever was winner, and Weider gave appellant checks for the amount he was winner. This was the check for $147.75.    The $200 check issued to appellant was issued to him and delivered to him as stakeholder in another game of cards called faro.    After the game was over, one Hart was winner; appellant transferred the check to Hart against the protest of Weider.    The other checks sued on, and on which recovery was had, were given to

appellant in a similar way for gambling debts. It will not be necessary to refer to any other circumstances in regard to Weider and his firm, as we do not deem it necessary in order to a proper decision of the case. The above were the main facts in the case, or at least the evidence tended to establish them, and the jury were justified in finding they were, though in some immaterial matters they were contradicted by evidence by appellant.

The appellant's attorneys make several points which they urge for reversal. First, it is urged that the action will not lie under the common counts for money had and received and laid out and expended, etc., for the reason that the appellant never agreed to pay appellees any money, and has not received any to their use, and if there is any right of recovery at all in appellees, they should have declared specially. We think the point is not well taken. A bank check in this State transfers the money of the drawer in the bank to the drawee the moment the check is delivered, and from that moment it ceases to be the property of the drawer, and belongs to the drawee or his assignee. In this case appellant actually drew out the money from the bank on appellees' checks, issued by Weider to pay a gambling debt. The other check was transferred to another party by appellant and was drawn by him. Now, though these checks may not have been legal, they accomplished their purpose, and appellant got appellees' money on them, or assisted others to do so, and thus must be held to have received appellees' money on a gambling debt. Other parties may have been liable, but this would not render appellant less so. For the doctrine that a check transfers the drawer's money to the drawee, we refer to Ridgely Bank v. Patton, 109 Ill. 479; Brown v. Leckie, 43 Ill. 497; Bank v. Ritzinger, 118 Ill. 484; The Union Nat. Bank v. Oceana Co. Bank, 80 Ill. 212.

It is insisted, again, that inasmuch as Weider could draw out appellees' money, in part, to pay his own salary, that so far as that salary was concerned the money was his. We think this claim made by appellant's attorneys can not be sustained. The money, until drawn by Weider and applied on

his salary, belonged to appellees, and the evidence shows that these checks were not drawn to pay salary or for any purpose or benefit of appellees, but for gaming purposes, and that appellant received the benefit of it in that way, and that appellees received no benefit therefrom either for the payment of Weider's salary or for any other purpose. The appellant makes another claim, and that is, that subsequently to the losses by gaming, Weider had paid appellees some portion of such losses and that appellant is at least entitled to a deduction in a proportionate amount, and that some money was won by Weider of appellant which the former may have used to pay appellees some portion of the loss. We think neither of these contentions is maintainable. There was at the time of trial a large amount due from Weider to appellees on account of these gaming and other defalcations, and the appellant can not be allowed credit for such payment, at least till all are paid, or till there is less due than the amount claimed in this suit. If appellant had paid anything specifically on the amount sued for by appellees, and it had been so applied, then reduction might be claimed; not otherwise. If any action had accrued to appellant against appellees on account of money won by Weider from him, and paid to appellees, a question we need not decide, the appellant might have an action against them if one would lie, but it can not be regarded as payment of appellant's debt in suit unless it was so accepted. But we think the evidence entirely fails to show any such state of facts.

The saying, in appellees' second instruction, that Weider could not draw a check to pay his own debts against appellees' money, may not have been strictly true, but it can not be harmful to appellant, for in drawing checks to pay gaming debts he was not trying so to do, but was doing something he had no authority to do, which must have been known to appellant at the time.

The appellees' third, fourth, fifth, sixth, eighth, ninth and tenth instructions were not erroneous in assuming the money in the Peoria bank was that of appellees, for such it undoubtedly was, Weider only having a right to draw it out for certain purposes, none of which was for gaming. The court

committed no error in excluding appellant's refused instructions, as will be seen from what we have already said.

The question as to how much of appellant's money Weider received after the date of the game at which he won $1,600, was properly excluded. This could make no difference under the facts of this case, as we have above shown, and besides, appellant received the benefit of all this class of testimony at another time during the trial.

We see no error in the record and the judgment of the court below is affirmed.

*Judgment affirmed.*