CHICAGO—FIRST DISTRICT—NOVEMBER, 1921.   237

Madison Coal Corporation v. Pittsburgh Coal Co., 222 Ill. App. 237.

# Madison Coal Corporation, Appellant, v. Pittsburgh Coal Company, Appellee.

## Gen. No. 26,260.

VENDOR AND PURCHASER—*construction of contract providing for operation of the property pending completion of sale.* A tentative agreement for the sale of mining property, except certain specified equipment, providing that the vendor should operate the property pending the examination of the title and the approval of the agreement by the directors of both parties, and, upon completion of the sale, should account to the vendee for the net earnings of the "entire property" during such operation, *held* to contemplate that the vendee should be debited with the cost of the operation and maintenance of the excepted equipment during such period.

Appeal from the Municipal Court of Chicago; the Hon. WELLS M. COOK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed November 1, 1921.

SCHWARTZ & SCHWARTZ, for appellant; ULYSSES S. SCHWARTZ and HERBERT A. FRIEDLICH, of counsel.

JOHN J. SHERLOCK, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Plaintiff brought an action of the first class in assumpsit in the municipal court of Chicago to recover of the defendant the sum of $3,822.41. On the trial without a jury the court found the issues against the plaintiff and entered judgment against it for costs and this appeal followed.

The action is predicated upon a so-called "Tentative Agreement" in writing, executed by the parties in September, 1917, covering the sale to plaintiff of defendant's mining property at DeKoven, Kentucky. It is provided therein, in substance, that the purchase

price of the "property" shall be $225,000, plus the
value of the merchandise in defendant's store; that
said purchase price shall include all mine buildings, all
dwellings, all machinery, all mine supplies on hand,
as well as the surface and mineral rights contained in
and connected with said property, but that "there
shall be excluded all river and railroad equipment
(which is to be removed by the vendor), but the river
railroad track, as now existing, is not to be removed
and is to be included in the purchase price"; that the
river equipment to be removed includes the "boat
loader, incline, drum, boat mover, five ton cars used
on said railroad for transportation of coal, steam lo-
comotive, pump boat, and any other equipment used
on the river railroad for loading barges"; that the
sale of the "property" is to be "contingent upon the
results of the examination of titles and of the land"
as described in a certain blue print; that "when the
sale upon price and conditions herein given is ap-
proved by the boards of directors of both companies,
and the stockholders of the vendor, until which this
agreement shall not be binding, the vendor shall con-
tinue operating the property, loading and delivering
all of its coal to the vendee, commencing with the 16th
day of September, 1917, pending the examination of
land and titles, and until a finding has been made
thereon"; and that "the vendee shall pay for all coal
so mined and delivered at the rate of $1.50 per ton,
not later than the 20th day of each month for all coal
furnished the preceding month." And it is provided
in the 6th paragraph of the agreement:

"In case titles are found to be good, the property
shall pass into possession of the Madison Coal Corpora-
tion at the close of the next pay roll period thereafter,
and thereupon the vendor shall make an accounting
to the purchaser covering the operations of the *entire
property,* commencing with September 16, 1917, and
up to the date the purchaser takes charge of the

property, and shall pay the vendee the net earnings of the *entire property,* and which will include earnings derived from the sale of coal, sale of merchandise, rentals of every character, and income from all sources.''

In compliance with said agreement defendant continued to operate the mining property from September 6, 1917, until December 1, 1917, on which last-mentioned date plaintiff took over all that portion thereof which it had agreed to purchase.

In its statement of claim, filed April 10, 1919, plaintiff alleged that defendant undertook to account to it for the operation of the mine during said period and to pay to it the net earnings of the entire property referred to in said agreement; that defendant did not so account and did not pay over to plaintiff all of said net earnings, but failed to pay to plaintiff the sum of $3,608.45 of said net earnings; that said sum is now due plaintiff, together with interest thereon at 5 per cent per annum from February 4, 1918, amounting to $213.96; and that the total amount due plaintiff is $3,822.41. Defendant's affidavit of merits was to the effect that it was not indebted to plaintiff in any sum.

On the trial there was no material conflict in the evidence. Plaintiff introduced the written agreement, defendant's written account covering the receipts and disbursements during said period and certain letters and telegrams, and called as a witness A. J. Moorshead, president of plaintiff, who testified at length. On behalf of defendant, S. C. Gailey, assistant to defendant's president, testified, and certain letters and telegrams were introduced. Moorshead and Gailey were the persons who negotiated and executed the agreement on behalf of the respective parties. The facts disclosed are, in substance, as follows:

In September, 1917, defendant was the owner of a coal mine at DeKoven, Kentucky, on the Ohio river. For years the defendant and its predecessor in owner-

ship had operated it as a "river and rail mine," that is, the coal mined could be shipped either by rail or by barges towed by steamboats on the river. When there were dry spells and the water in the river was low the coal was shipped by rail, but when conditions were favorable most of the shipping was by water. Defendant had a harbor boat to assist in shifting the barges around, a pump boat and landing, men for their care and for loading, and about 15 or 20 coal boats and 15 barges at DeKoven. Plaintiff was a subsidiary corporation of the Illinois Central Railroad Company and sold all of its coal to that railroad company. It desired to purchase defendant's mine in order to furnish coal to the railroad company, but it had no use for defendant's river equipment, and that equipment was specifically excluded in the agreement to purchase. It further desired to obtain coal from defendant's mine at once, but it did not want to obligate itself to purchase the mine until it had had an opportunity of further examining the land and the title thereto and approving the purchase. Hence, the "tentative" agreement was executed. After its execution and prior to the time plaintiff took over the mine, defendant continued to operate the mine and delivered all of the coal.mined to plaintiff with the exception of 900 tons, which plaintiff, at defendant's urgent request, allowed the latter to retain and use in its river trade, and for which the latter in its acccounting credited plaintiff at the rate of $1.50 per ton, but did not allow any credit for the use of said river equipment in transporting said 900 tons so released, and which was apparently the only active use that said river equipment was put to during said period. Defendant so preserved and maintained the river equipment and kept it in such condition that, in case the coal could not be loaded by rail, the continuous operation of the mine might go on, and that, in case plaintiff did not finally purchase the mine, the same might

be in the same condition for defendant's use as when said agreement was executed. After plaintiff took over the mine defendant delivered a written account to plaintiff wherein it debited plaintiff with the sum of $4,935.79 for "care and maintenance of river railroad, steamboat and river craft." On January 31, 1918, defendant's auditor wrote plaintiff, in reply to its inquiry concerning said sum, giving an itemization thereof as follows:

"Labor, fuel & supplies—railroad and railroad equipment ...................... $1,327.34
Labor, fuel & supplies & insurance on steamboat ............................ 1,602.05
Labor, fuel & supplies of pump boat and care of river craft ................... 2,006.40

$4,935.79''

Plaintiff made no objection to the item of $1,327.34, but objected to its being debited in the accounting for said second and third items, aggregating $3,608.45, and the sole issue in the trial court was whether, under the provisions of said tentative agreement, the debit was a proper one. By refusing certain propositions of law submitted by plaintiff the trial court held in effect that said debit was a proper one and that the words "entire property," contained in the 6th paragraph of the tentative agreement, included the steamboat, pump boat and other river craft of the defendant.

Counsel for plaintiff here contend that the trial court erred in refusing to hold as a proposition of law that the words "entire property," contained in the 6th paragraph of the agreement, did not include the river equipment. We do not think so. In other paragraphs of the agreement the single word "property" is frequently used, and in most instances clearly refers to that portion of defendant's mining property which plaintiff is to purchase contingent upon the results of the examination of titles and of the land. The

use of the words "entire property" in the 6th para-
graph is significant, and, as the river equipment was
a part of defendant's mining property when said
agreement was executed, we think said words must be
held to include the river equipment.

Counsel further contend that the court erred in re-
fusing to hold that plaintiff was entitled to recover
the amount of its claim. Counsel argue that under the
agreement the river equipment, during the accounting
period, was not to be operated for the benefit of plain-
tiff and, therefore, the charges for the maintenance
and operation thereof should not have been debited
to plaintiff in the accounting. We think that the
finding and judgment of the court were correct. The
agreement is entitled a "tentative agreement" and a
careful reading of it discloses its tentative character.
It apparently was the intention of the parties that,
in the event the title to the property should prove so
defective that plaintiff could not be compelled to take
it, both parties should be placed in the same positions
they were in at the time of the execution of the agree-
ment, and that the entire property should remain *in
statu quo* and be maintained and operated as far as
possible, during the accounting period, the same as
before. The agreement specifically excludes the river
and railroad equipment from the proposed purchase
and provides for the removal of the same by the ven-
dor (defendant), but no provision is made as to when
such removal is to take place. This suggests that it
was the intention of the parties that such removal
should not take place until the agreement was consum-
mated, if it was consummated, and that pending such
consummation said equipment should be maintained
and operated the same as before. Furthermore, it
is provided in the 6th paragraph of the agreement
that if the agreement is consummated the vendor
(defendant) shall make an accounting covering the
operations of the "entire property," during the pe-

riod mentioned, and shall pay to the vendee (plaintiff) "the *net* earnings of the entire property." This suggests that it was the intention of the parties that the cost of maintenance and operation of the river and railroad equipment, during such period, should be deducted from the gross earnings. If their intention had been otherwise it would have been a simple matter to have expressed it by an appropriate clause in the agreement.

The judgment of the municipal court is affirmed.

*Affirmed.*

BARNES and MORRILL, JJ., concur.