Huffer v. First National Bank of Shelbyville, 242 Ill. App. 111.

---

**Mary E. Huffer, Appellee, v. First National Bank of Shelbyville, Appellant.**

### Gen. No. 7,925.

1. AGENCY—*when general agency of son for mother not shown.* The fact that a bank depositor, on removing to another city, had left to her son the matter of taking care of the deposit account and of looking after a loan she had made on a note secured by a mortgage, and in connection therewith had authorized the bank

to pay checks signed by the son for her, did not constitute such son her general agent.

2. BANKING—*limitations upon authority of bank authorized to honor checks signed for depositor by her son.* Where a depositor, in connection with leaving with her son the matter of taking care of her deposit account and looking after a loan she had made upon a note secured by a mortgage, authorized the bank to pay checks signed for her by the son, the bank did not, from such facts alone, have authority to honor checks upon her account drawn for the personal use and benefit of the son, nor for the joint use and purposes of the son and the bank.

3. BANKING—*authorization of bank to honor checks signed for depositor by her agent as conferring authority to pay over, without check, portions of funds accepted as deposits on her account.* Authority given by a depositor to the bank to pay checks signed for the depositor by her son did not authorize the bank to turn over to such son, without check, funds accepted by the bank for deposit to the credit of the depositor, nor to use such funds for the purpose of liquidating an obligation of the son to the bank.

4. BANKING—*Authorization of agent of depositor to sign checks for her as conferring authority to indorse such instruments.* The fact that a depositor had authorized the bank to honor checks signed for her by her son conferred no authority upon the son to indorse checks or other negotiable instruments payable to the depositor.

5. BANKING—*burden of proof as to authority of agent of depositor to indorse checks, etc., payable to her, in action against bank upon deposit.* In an action by a depositor against a bank to recover the balance alleged due on the deposit account, the burden rested upon the bank to establish the authority of the depositor's son to indorse the depositor's name upon checks payable to her and accepted by it for deposit to the credit of her account, a part of the proceeds of which it had paid over to the son without check.

6. BANKING—*Sufficiency of evidence, in depositor's action against bank, to show authority of bank to apply deposit to liquidate indebtedness of depositor's agent.* Evidence, in an action by a depositor to recover the balance alleged due to her on the deposit account, held insufficient to show that the depositor had authorized the bank to apply any portion of the deposited funds, or of funds accepted by it for deposit to her account, to liquidate an indebtedness of the depositor's son to the bank.

7. AGENCY—*right of principal to recover back money paid to agent unauthorized to receive same, upon his appropriation thereof.* Where the money of a principal is paid to an agent who has no authority to collect or to receive the same, and is appropriated by

Huffer v. First National Bank of Shelbyville, 242 Ill. App. 111.

the agent, the principal has a right to recover back the amount so paid.

8. AGENCY—*notice of limitations of powers of agent.* One dealing with an agent is chargeable with notice of the limitations of his agency.

9. BANKING—*liability of bank to depositor for funds improperly permitted to be withdrawn or diverted from account by agent.* Where a bank, without the knowledge or authority of its depositor, permitted her son to withdraw from the account parts of such deposit and to divert to his own use such funds and parts of other funds accepted by the bank for deposit to the credit of the depositor's account, the bank was liable to the depositor for the funds so improperly withdrawn or diverted.

10. BANKING—*when instruction, in depositor's action against bank, not erroneous because including assumption of misappropriation of funds of account.* Where the evidence, in a depositor's action against the bank to recover the balance alleged due upon such account, showed that the depositor's son, in withdrawing and diverting a part of the funds of such account, did so as a means of using such funds for his own purposes and in connection with his own financial transactions with the bank, and further showed that the bank aided and permitted such transactions when chargeable with notice of the purpose thereof and with the fact that they were beyond the scope of the son's agency for his mother, an instruction assuming that such transactions amounted to a misappropriation of the depositor's fund was not erroneous.

11. HARMLESS AND PREJUDICIAL ERROR—*instruction correct in law but without bearing on issues of case.* The fact that an instruction was improperly given because covering a matter not in issue in the case does not render the giving thereof prejudicial error where the instruction was not erroneous as a statement of the law pertaining to the facts therein stated and could not have misled the jury as to the real issues of the case.

12. APPEAL AND ERROR—*affirmance of judgment where error in instruction inconsequential.* Where the evidence in an action warranted the verdict returned therein, and substantial justice was done by the verdict and judgment, the judgment will not be reversed because of inconsequential errors in the instructions.

Appeal by defendant from the Circuit Court of Shelby county; the Hon. HARRY C. STUTTLE, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed July 1, 1926. Rehearing denied October 28, 1926.

George D. Chafee, J. J. Baker and George B. Rhoads, for appellant.

Ward & Pugh and J. N. Moore, for appellee.

Mr. Presiding Justice Niehaus delivered the opinion of the court.

In this case an appeal is prosecuted by the First National Bank of Shelbyville, from a judgment rendered against the bank in the circuit court of Shelby county, in favor of the appellee, Mary E. Huffer, for the sum of $3,208.83. Mary E. Huffer was a depositor in the appellant bank, and on January 7, 1919, had a balance to her credit, in the account, of $33.40. Her claim in this case is for the balance referred to, and additional deposits and credits, amounting in all to the sum of $6,693.81. It is admitted that her account should be charged with the sum of $872.50, which is the sum total of checks drawn by her on the account, which leaves the sum of $5,821.31 as the subject of the controversy in this suit. There is little dispute about the main facts, about the figures, or about the summaries and calculations relating to the items embraced in the deposit account. The proofs show that the appellee in January, 1913, when she was living at Shelbyville, came into possession of $4,700, realized from the sale of a farm of her deceased husband, which was located near Shelbyville, and this money was loaned by her to Morris T. Robison, upon a note secured by mortgage on January 18, 1913. It was a three-year loan, but afterwards extended to five years, and it finally matured January 18, 1921. Shortly after the loan had been made, appellee removed from Shelbyville to Danville, and thereafter made her home at the latter place with her daughter, Mrs. H. B. Martin. Upon her removal to Danville, she left the matter of looking after the Robison loan and taking care of her deposit account in the appellant bank to her son, Lewis

J. Huffer, who was a resident of Shelbyville. And the evidence shows that in connection with her deposit account she signed a signatured card for the appellant bank, by which she authorized the bank to pay checks signed for her by her son Lewis. It also appears from the evidence that her son Lewis was also a depositor in the appellant bank, and had various and continued financial transactions of his own with the bank during the entire period in which he acted for his mother. The evidence also discloses that during the period of the agency referred to, the appellee at various times became indebted to the bank on notes which she signed at the instance of her son Lewis for various amounts, and that the notes so given were renewed and sometimes increased; and that in this way, at one time, she was indebted to the bank in the sum of $701.90. It also appears that her son Lewis during the period of his agency, in connection with his own financial transactions, also became indebted to the bank in various amounts, and at different times, and that this indebtedness on April 25, 1922, amounted to the sum of $2,276.83, and was represented in the amount of the principal of promissory notes held by the bank, and accrued interest. The evidence also shows that the appellant bank, under the authority given it on the signature card, to pay checks signed for her by her son Lewis, had honored a large number of checks drawn by Lewis, by signing his mother's name, which were payable to himself; and by this means transferred at different times various amounts of the funds standing to the credit of his mother in her account, to his account; and these amounts were made use of for his own purposes in his own business transactions, and to pay his own debts and obligations. The amount withdrawn by Lewis from his mother's account in this manner was $1,642.25. The evidence also shows that on several occasions, when Lewis brought in checks belonging to his mother, and payable to her order, which

116        APPELLATE COURTS OF ILLINOIS.

Huffer v. First National Bank of Shelbyville, 242 Ill. App. 111.

represented payments of interest or part payment of
the principal of the Robison loan, the appellant bank
accepted these checks for deposit for her account on
Lewis' indorsement of his mother's name, and made
out a deposit slip showing the deposit and amount
thereof, and thereupon allowed Lewis to withdraw a
part of such deposits in currency or cash, which cash
or currency was turned over to Lewis without any
checks drawn therefor; and that then the mother's de-
posit account was credited only with the difference
between the amount of the deposit according to the
deposit slip and the amount of currency or cash turned
over to Lewis.   Thus on January 19, 1920, Lewis
brought to the bank a check for $282 payable to the
mother for deposit, and indorsed the mother's name
thereon; and the check was received by the appellant
bank for deposit in the way referred to, and then $65
of the deposit was returned to Lewis in currency, and
the balance of $217 was credited to the mother's ac-
count.   In the same way Lewis brought to the appellant
bank for deposit at another time a check for $1,282,
payable to the order of the mother, which was for part
payment of principal, and interest due on the Robison
note.   This check was accepted in the same way by the
bank for deposit to the credit of the mother's account,
with Lewis' indorsement of the mother's name there-
on; and then the appellant bank allowed Lewis to with-
draw from this deposit before it was entered in the ac-
count, and without any check being drawn therefor,
the sum of $417, and the mother's account was given
credit for the balance of $865.   On another occasion
when the balance of the Robison loan was paid off,
April 25, 1922, a check was given in payment,
amounting to $4,027.32 which was made payable to the
order of the appellant bank, and was received by the
bank.   After the appellant bank had received the same
on the mother's account, there was deducted from the
amount of the deposit, without any check being drawn

therefor, not only the amount of a note which the mother had signed, upon which she was apparently indebted to the bank, and amounting to the sum of $450, but also the amount of Lewis' indebtedness to the bank, amounting to the sum of $2,276.83; then after deducting the latter amount, which the bank received the benefit of, the balance of $1,300.49 remaining was credited in the mother's deposit account as the correct amount of her deposit on that day. There is no proof in the record to show that the mother ever at any time gave her son Lewis authority to indorse her name upon any checks payable to her, which he had collected for her. But it is contended by the appellant bank that Lewis had such authority because he must be regarded as her general agent, and that therefore the bank had the right to deal with him as a general agent, and that the indorsements of the mother's name made by Lewis on the checks mentioned came within the scope of a general agency. We cannot agree with this contention. The appellee was not engaged in any business requiring the services of a general agent, and moreover the evidence clearly shows that the appellant bank was fully cognizant of the purpose and scope of Lewis' agency and familiar with the matters pertaining thereto. It is true, the mother had authorized the appellant bank to pay checks signed for her by her son Lewis, but this authority had reference to the mother's business matters which involved her deposit account, and cannot properly be considered as including authority to honor checks drawn for the personal use and benefit of Lewis, or the joint purpose and use of Lewis and the appellant bank. *McAllister v. Oberne, Hick & Co.,* 42 Ill. App. 287; *Merchants & Manufacturers Nat. Bank v. Ohio Valley Furniture Co.,* 57 W. Va. 625, 70 L. R. A. 312; *Rochester & C. Turnpike Road Co. v. Paviour,* 164 N. Y. 281, 52 L. R. A. 790. Nor would the authority given the appellant bank to pay checks signed for her by Lewis justify the inference that she

would consent to have it extended, to be used by the bank or Lewis, to pay over to her son, without a check being drawn therefor, parts of funds accepted by the bank for deposit for her account; nor would it justify the use of the mother's funds, received by the bank for deposit, for the purpose of paying Lewis' indebtedness to the appellant bank; nor would it be authority to Lewis to indorse checks, or other commercial paper of the mother. *Crahe v. Mercantile Trust & Savings Bank,* 295 Ill. 375. "An agent's acts in making or transferring a negotiable paper (especially if by indorsement) are much restrained. It seems that they can be authorized only by some express and direct authority, or by some express power which necessarily implies these acts." Parsons on Contracts, vol. 1, p. 62; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 156. The appellant bank took the risk on the question of the authority of appellee's agent to indorse the check and appropriate the proceeds. *Gustin-Bacon Mfg. Co. v. First Nat. Bank of Englewood,* 306 Ill. 179. It is well settled that "authority to collect debts and give discharges carries no implication of authority to endorse a negotiable note." 1 Daniel on Neg. Inst. (4th Ed.), sec. 293; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank,* 199 Ill. 151. In this case, the burden rested on the appellant bank to prove the authority of the mother's agent to indorse the checks referred to. *Foster v. Graf,* 287 Ill. 559; *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278. It is contended, however, by the appellant bank, that inasmuch as the mother in the course of her business transactions with the bank had signed a note for $1,000 for her son Lewis, which was payable to his order, and which he gave to the bank as collateral security for his indebtedness, and because thereafter the mother had indorsed the Robison note, which her son Lewis thereupon put up as collateral security, for her indebtedness to the bank, as well as for his own in-

debtedness to the bank, that authority could be inferred, from this transaction, to legally justify the use of the funds in the mother's deposit account, as well as the funds accepted by the appellant bank for deposit in her account, for liquidating the indebtedness of Lewis to the bank. The record does not disclose any evidence from which authority can be inferred that appellee indorsed the Robison note for the purpose of having it used as collateral security for her son's indebtedness to the bank. The mere fact that she may have indorsed the note would not justify such an inference; nor is there any evidence from which the legal inference can be drawn that she consented to or authorized in any way the use of the proceeds realized from the payment of the Robison note, to pay the indebtedness of her son Lewis, to the appellant bank. "The nature and extent of an implied authority are deemed to be limited to acts of a like nature with those from which it is implied." 1 Amer. & Eng. Encyc. of Law (2nd Ed.), p. 1002; *Jackson Paper Mfg. Co. v. Commercial Nat. Bank, supra.* In this case there is no evidence showing the assent on the part of the mother to the transactions between appellant bank and her son Lewis, but all the evidence is to the effect that appellee had no knowledge whatever concerning the matters referred to. It is well settled by the authorities cited that where the money of a principal is paid to an agent, who has no authority to collect or receive the same, and is appropriated by the agent, the principal has the right to recover back the amount paid in that way. And the general rule pertaining to agency is, that a person dealing with an agent is charged with notice of the limitations of his agency. *Madison Coal Corporation v. Pittsburgh Coal Co.*, 222 Ill. App. 237; Randolph Commercial Paper, sec. 388; *Merchants & Manufacturers Nat. Bank v. Ohio Valley Furniture Co.*, 57 W. Va. 625, 70 L. R. A. 312; *Rochester & C. Turnpike Road Co. v. Paviour*, 164 N.

Y. 281, 52 L. R. A. 790. In this state of the record, and in view of the authorities cited, we conclude that the appellee had the right to recover from the appellant bank the amount of her funds on deposit or received by the appellant bank for deposit which were diverted from her deposit account by her son Lewis, with the knowledge or acquiescence of the bank. Also to recover the amount of such funds which were used by Lewis and the appellant bank for the purpose of liquidating the indebtedness of Lewis to the bank.

Complaint is made by the appellant bank concerning the giving of several instructions for the appellee. Instruction A is criticised because it assumes that by the transfer of appellee's funds from her account in the bank to the account of her son, there was a misappropriation of appellee's funds. The evidence shows that the transfer of the funds was made by appellee's son as a means of using the funds for his own purposes and ends, and in connection with his own financial transactions with the appellant bank. The act of transferring the funds from appellee's account to his own account under these circumstances was in itself a misappropriation of the funds involved, and there is no evidence tending to show that the transfer was made for the purpose of the son's agency. All the vouchers and book entries by means of which the transfer was effectuated, and the transactions pertaining thereto, were handled by the appellant bank, and the appellant bank under these circumstances is charged with notice and the purpose of these transactions. *Rothstein v. Grossberg,* 303 Ill. 619. For the reason stated, the assumption in the instruction was not erroneous. Instruction B aims to define what the jury must find from the evidence before they can regard the appellant bank as an innocent holder of the Robison note for value and in due course. Inasmuch as the rights of the appellant bank as an innocent holder for value of the Robison note were not involved

as an issue in the case, the instruction referred to should not have been given; but the instruction did not direct a verdict, and the matters contained therein could not have misled the jury concerning the real issues in the case. The giving of this instruction is therefore not regarded as reversible error. *Bromley v. Goodwin*, 95 Ill. 118. It is contended that instruction C is erroneous because the phrase in the instruction "that Lewis Huffer was the agent of the plaintiff for the collection of the interest due her on said note," omitted a word which would fix more definitely that he was agent only for collection of interest. It is hardly conceivable, however, that the jury would have drawn any conclusion from the instruction, other than that the collection of interest was the subject matter of the agency referred to in the instruction. We are of opinion that the instruction was not erroneous as a statement of the law pertaining to the facts stated in this instruction. The jury were warranted from the evidence in finding in favor of the appellee, and in finding that she was entitled to recover the amount found by the verdict, and are of opinion, therefore, that substantial justice is done by the verdict and judgment. In this state of the record the judgment should not be reversed for inconsequential errors in instructions, or slight errors in the admission or rejection of evidence. *Bromley v. Goodwin, supra; Beifeld v. Pease*, 101 Ill. App. 539. The judgment is therefore affirmed.

*Judgment affirmed.*