CULP BROS. PIANO COMPANY *v.* MOORE.

Opinion delivered February 4, 1924.

1. GOOD WILL—SUFFICIENCY OF EVIDENCE.—In an action on notes given as purchase price of plaintiff's interest in musical instruments business, where the defense was that plaintiff broke his contract not to re-engage in the same business in the same territory, evidence *held* sufficient to sustain a verdict for plaintiff.

2. TRIAL—INSTRUCTION—SPECIFIC OBJECTION.—Objection to an instruction that it contains misleading phraseology should be specific.

3. INTERNAL REVENUE.—The Federal tax on the income of a corporation is primarily the debt of the corporation, and there is no legal obligation upon the stockholders, after selling their shares, to pay the accrued taxes of the corporation, in the absence of a special agreement.

4. TRIAL—INSTRUCTION.—Where the defense to notes was a breach of an alleged contract not to re-engage in the musical instrument business, an instruction that defendant must show that such contract was based upon a consideration and was not merely an agreement to stifle competition, *held* not intended to submit the question whether the contract, if made, was valid and binding.

5. CONTRACTS—RESTRAINT OF TRADE.—Contracts in partial restraint of trade with reference to a certain business, where ancillary to sale thereof with good will, are valid to an extent reasonably necessary for the purchaser's protection.

Appeal from Sebastian Circuit Court, Fort Smith District; *John Brizzolara,* Judge; affirmed.

*Holland & Holland,* for appellant.

1. The verdict is contrary to the evidence. 114 Ark. 332; 118 Ark. 554.

2. The contract was definite and certain, and sufficiently so. 148 Ark. 226; 13 Corpus Juris, § 411; 112 Ark. 126.

3. Instruction 7 requested by the defendant correctly stated the law and should have been given. 148 Ark. 226; 127 Ark. 593.

4. The good will of a business is a valuable interest which the courts will protect. 20 Cyc. 1276. And agreements to refrain from entering into competition with the purchaser within specified limits and for a specified time are valid and will be upheld. 20 Cyc. 1280-1; 112 Ga. 498; 37 S. E. 758; 17 Corpus Juris, § 122; 13 *Id.,* § 520, and cases cited in note (a); 13 *Id.,* p. 557; 112 Ark. 130; 95 Ark. 387; 94 Ark. 461; 62 Ark. 101; 91 Ark. 367; 121 Ark. 45.

*A. M. Dobbs,* for appellee.

1. Counsel's contentions against the verdict are bottomed upon three hypotheses which are purely

assumptions, not supported by the record, viz; (1) that the jury returned a verdict for income tax only; (2) that it found the contract alleged was established and breached, and (3) that there was satisfactory proof of substantial damages. It cannot be determined from this record whether the amount returned by the jury and deducted from the undisputed amount was intended by the jury for income taxes paid, or damages for breach, or both. It is discretionary with the jury whether it will return special verdicts or a general verdict, unless required by the court to make special findings. C. & M. Digest, § 1303. None was required in this case.

2. Instruction 5, objected to by appellant, was correct. It set out the necessary elements to entitle defendant to recover on its alleged contract, and the phrase, "and not merely an agreement to stifle competition" was used to distinguish the difference between an agreement ancillary to the sale of a business, and a bare agreement to refrain from engaging in business. 127 Ark. 590.

3. Instruction 7, objected to, declares the law as recognized by this court. 157 Ark. 274.

WOOD, J. On October 1, 1919, Culp Bros. Piano Co., appellant, was a corporation of Arkansas engaged in the business of selling musical instruments, with its principal place of business at Fort Smith, Arkansas, and with a capital stock of $12,000, of which appellee owned one-fourth, $3,000, and Culp Bros. owned three-fourths, $9,000. The appellee was president of the company. In January, 1919, the stock of the company was authorized to be increased to the sum of $50,000, the increase representing what was supposed to be the profits of the business at that time. No additional money was paid in by the stockholders, but stock was issued to the appellant and the appellee, in the proportion of their respective interests, to absorb what was believed to be the book profits of the company. Several years prior to the first of October, 1919, appellee had been engaged in the business of selling musical instruments at Hartford, Sebastian County, Arkansas, and the surrounding

trade territory. The appellant contends that, on the first of October, 1919, the appellee agreed to sell his stock in the company to appellant, and also, as a part of the consideration for the sale of his stock, that he would not engage further in the music business at Hartford, nor would he engage in that business at Hartshorne, Oklahoma, nor at Fort Smith or Russellville, Arkansas; that, in consideration for this sale of stock and good will in the music business of the appellee at Hartford, the appellant executed and delivered to the appellee promissory notes, numbered respectively from one to twelve, for $1,000 each, dated October 1, 1919, bearing interest at the rate of eight per cent. per annum from date until paid, and with different due dates. Notes numbered 1, 2, 4, 5 and 6 and a part of No. 3 had been paid.

This action was instituted by appellee on August 4, 1922, to recover an alleged balance due on the unpaid notes in the sum of $6,356.35, with interest at eight per cent. The appellant, in its answer, admitted the execution of the notes, and set up that the consideration for which the notes were executed was as set forth above, and that such consideration had failed since January, 1922, because the appellee had not carried out his agreement with the appellant, but, on the contrary, that he was then, and had been for a time unknown to the appellant, engaged in selling and offering to sell musical instruments, in person and by agent, and had thereby hindered and injured the business of the appellant. The appellant also set up that, since appellant's purchase of appellee's stock and good will, it had been compelled to pay an additional income tax for the years 1916, 1917 and 1918, and during the year 1919 up to the time that appellant purchased appellee's stock and good will at Hartford. That appellee's proportion of this tax would amount to $1,203.17, and that the damages to appellant by the failure of the appellee to comply with his contract, together with the amount of the income tax due the appellant from the appellee, would equal the amount

claimed by the appellee on the notes. Appellant there-fore prayed that it be allowed to recoup by way of abatement in the full sum claimed by the appellee.

The appellee demurred to the answer, which demurrer was overruled. He then replied, denying specifically the allegations of the answer, and setting up that he sold his capital stock in appellant to the 'appellant alone for the sum of $12,500, and alleged that the appellant received that value in actual assets and profits, exclusive of any good will in appellant's business at Hartford. The appellee also filed a supplemental complaint, in which he set up that, since the bringing of his suit, another note had matured in the sum of $1,259.60, and he prayed judgment in the total sum of $7,615.95.

The appellee testified that he owned stock of the value of $12,500 in the company when he sold to the appellant, and he stated that the notes in suit were executed as a part consideration for the purchase of his stock, and he exhibited the notes and testified that the amount due to date, with interest, was $7,117.56. The notes were given for his interest in the appellant. The Hartford Music Company was established at Hartford on November 30, 1920. It was a partnership. Appellee was not a member of the firm, and never had been. He signed pay checks in the name of Hartford Music Company by David Moore. Appellee worked for the company a while, and signed pay checks as above. The company paid him a salary, and he had an office in the back of the store. Appellee was manager for a while, beginning between November 10 and December 10. Appellee sold out his music business at Hartford to the company November 30, 1920. Appellee, at the time of the giving of his testimony, was not employed by the company. His employment ended February 10, 1922.

The appellant introduced testimony to the effect that certain parties had purchased pianos from L. I. Beavers, representing the Hartford Music Company at Hartford, Arkansas, and the purchasers had receipts for payments signed, "David Moore Music House, per L. I.

Beavers," and purchase money notes were executed in the name of David Moore Music Store. One of the witnesses for the appellant testified that the Chase-Hackley Piano Company of Muskegon, Michigan, had sold pianos to the David Moore Music House at Hartford, Arkansas, billing the same from the factory to Hartford, Arkansas, to the account of David Moore. Witness' correspondence was with David Moore. The pianos might have been billed to the Hartford Music Company, but witness' understanding was that Moore was behind it. At one time Moore wrote witness about billing to Hartford Music Company, as he had sold out his business. Witness refused to do business with the Hartford Music Company. It was witness' understanding that Moore had sold out, and he was not willing to do business with any one else in the territory on account of Culp Bros. working that territory. Witness exhibited sale bills to David Moore Music House at Hartford, Arkansas, in November, 1921.

J. H. Culp testified that he was a member of Culp Bros. Piano Company in October, 1919; that this corporation purchased the stock of the appellee in the corporation, and also his music business at Hartford, and the good will of that business. His testimony concerning the sale and purchase of appellee's stock and his business at Hartford was substantially as set up in the answer of the appellant. He testified that appellee promised, when appellant purchased his stock and music business, that he would never again go into the music business in this country if they would purchase his stock and business at Hartford, which appellant did, executing to him notes for $12,000 and paying him cash in the sum of $500. When they were closing the deal, witness called appellee's attention to the fact that the company would be owing an income tax, and that he would have to pay his proportion of such tax, and that appellee agreed to do so. At the time of the purchase, Culp Bros. had a small store at Russellville, Arkansas, and also one at Hartshorne, Oklahoma. The witness introduced checks

showing that the appellant had paid income taxes for the years 1916, 1917, 1918 and 1919, while the appellee was a stockholder, amounting to nearly $4,000, for which, he says, appellee agreed to pay his proportionate part. The witness knew that Hartford Music Company was operating in the territory of Hartford, before he knew that appellee had anything to do with it. Some of the notes had been paid before they ascertained that appellee was in business. This witness testified that he wrote a certain letter for the appellant to the appellee of October 3, 1919, in which the notes were transmitted for $11,500, and stating that the appellant supposed that the appellee had advised the different companies regarding the deal, and that he had requested them to send invoices, etc., to appellant, and stating that "any word you can speak for us to any of them or to the public in general will be greatly appreciated." Also, a letter of August 15, 1921, in response to a letter received by the appellant from the appellee, in which the appellee was demanding payment of the notes. In this letter appellant refers to the income tax, amounting to $4,099.40, that it had paid, and also mentions that "business and collections had been rotten," and concluded by saying "we can begin to send you some money and will get you up some within the next ten days, and trusting, in view of the above, you may continue your leniency," etc. Also a letter of February 17, 1922, in response to a letter from appellee demanding check for interest on notes, in which the appellant says: "We have just learned definitely that you are engaged in the music business at Hartford and that trade territory. Therefore, we must refuse payment of any sum whatever until you adjust and settle damages with us resulting from your breach of contract," and concluding by saying that the appellant had been damaged a great deal more than any alleged indebtedness to the appellee, and requesting appellee to call and adjust the damages. Witness stated that he learned about January, 1922, that the appellee had breached his contract.

B. D. Culp testified, corroborating substantially the testimony of his brother as to the sale and purchase of appellee's stock in the corporation and his business and good will at Hartford, and to the effect that, after the music company was established at Hartford, advertisements were published bearing the name of David Moore, music dealer, and he saw pianos there with Moore's name on them, consigned to him by the shippers. This witness also testified as to the amount of business that was done by appellant at Hartford before the Hartford Music Company was established, as to the effect that the establishment of the business of that company had on appellant's business, which was, substantially, that their profit before was around $3,000 per month, and that, after the Hartford Music Company was established, it ran down to nothing. This witness also testified to other facts tending to show that David Moore had continued in business with the Hartford Music Company after appellant had purchased his stock and good will, and after he had promised to go out of business at Hartford.

Another witness testified that he lived at Hartshorne, Oklahoma, and was working for Culp Bros. there, and that, after appellant purchased appellee's stock, the latter, in May or June, 1921, asked witness why he didn't go into the music business for himself, and told witness that he would let witness have as much as $2,000 in September if witness desired to engage in the music business. At that time there was no other competing music house in Hartshorne, Oklahoma.

Another witness, who resided at Mansfield and Hartford, a member of the school board, testified that he went to Hartford Music Company and asked about the price of a piano. He met appellee on the street, and he said that he was out of business, but would see what he could do for witness. Witness didn't know that he had sold out at the time. Later appellee met witness on the road, and made him a price.

The appellee, in rebuttal, introduced two witnesses who were members of the Hartford Music Company.

They both testified to the effect that appellee was never a partner in that business; that he worked for that partnership, and bought some instruments for the company. He might have ordered them in his own name, or in the name of David Moore Music House, and issued receipts for payment in the name of David Moore Music House. The Hartford Music Company used old receipt books formerly belonging to David Moore Music House. After appellee sold out to Culp Bros., appellee ran his jewelry business under the name of David Moore Music House until the Hartford Music Company bought him out. After the Hartford Music Company bought out the David Moore Music House the jewelry business was carried on in that name, and since was carried on under the name of Hartford Music Company, the company using blanks as the David Moore Music House. Appellee instructed the Hartford Music Company to strike out his name, but it didn't do it every time. It used receipts and notes of the old David Moore Music House. Moore advanced money to the company to buy a carload of Packard pianos. He loaned the company as much as $6,000 at a time, and took the notes of the company, but didn't take a mortgage on the instruments. The Chase-Hackley pianos were billed to the Hartford Music Company.

The appellee himself, in rebuttal, testified that he didn't know anything about the income tax until the appellant filed its answer in this case. He knew about the claim of the government for income tax against the appellant, but, when the trade was made, there was nothing said about it. He knew that the corporation was required to make an income tax report. After his sale to the appellant he never purchased any new stuff and sold it at Hartford or anywhere else. He had sold instruments on installments, and had some out at the time. These instruments were not included in the trade with appellant. Appellee had not engaged in business at any place.

The issues were submitted to the jury, under instructions which will be referred to hereafter, and the jury returned the following verdict: "We, the jury, find for the plaintiff, David Moore, in the sum of $6,417.43." Judgment was entered in favor of the appellee for that sum, from which is this appeal.

The court, in instructions given at the request of appellant, told the jury, in effect, that, if they found from a preponderance of the evidence that the appellee sold his interest and good will in the corporation to the appellant, and, as a part of the consideration, agreed with the appellant that he would not engage in the business of selling musical instruments at Fort Smith, Hartford, Russellville, Arkansas, and at Hartshorne, Oklahoma, and the trade territory surrounding these places, good faith required that he do nothing which tended directly to deprive the appellant of the benefits of the purchase; that if, at that time, it was agreed that if appellant was required to pay any sum as income tax on the stock purchased from appellee, appellee would reimburse appellant, then the jury should find for the appellant, upon that issue, such amount, if any, as appellant was compelled to pay income tax upon the stock purchased from the appellee; that the appellant set up in its answer that the appellee had breached his contract, by which the appellant was damaged; that the jury should determine this issue as any other fact in the case, and, if they found that appellee had breached his contract as alleged, which breach resulted in damage to the appellant, they should return a verdict in favor of the appellant for such damages as they found appellant had sustained by reason of such breach, and allow appellant an abatement of appellee's claim to the extent of such damages.

The court further told the jury that, if the appellee entered into the contract with the appellant as set up in the latter's answer, and the appellee thereafter, in person, by agent, or otherwise, engaged in the sale of musical instruments, this would be a violation of appellee's contract.

The appellant presented prayer for instruction No. 5, which the court modified and gave, as follows: "You are instructed that, if you find from a preponderance of the evidence that plaintiff contracted and agreed with defendant not to again engage in the music business, at the places mentioned in these instructions, and that afterwards the plaintiff did engage in said business at the places, in violation of his contract with defendant, either in person or by becoming interested in a rival or competitive concern at any of the places mentioned, whereby he was brought into actual competition with the defendant, then you will find for the defendant such sum as, from the evidence, will reasonably compensate it for the damages to its business by said plaintiff or competitive musical business in which plaintiff was interested, in violation of his contract, *if any*, with defendant." The modification made by the court, to which appellant objected, was the addition of the words "if any."

The appellant also presented prayer for instruction No 7, which the court refused, as follows: "You are instructed that, if plaintiff made such contract with the defendant, then it would be a violation of his contract to become interested in a rival and competitive concern to defendant, selling and offering for sale musical instruments in the towns of Fort Smith, Hartford and Russellville, in the State of Arkansas, and Hartshorne, Oklahoma."

The appellant contends here that the verdict was contrary to the evidence. It will be observed that the appellant did not ask the court to direct the jury to return a verdict in its favor, but, on the contrary, presented a prayer for instruction, which the court gave, in which it asked that the issue be submitted to the jury to determine whether the appellee sold his interest and good will in the appellant company, and, as a part consideration, agreed with the appellant that he would not thereafter engage in the business of selling musical instruments. The issues as to whether there was a con-

tract between the appellant and the appellee, as set up in the appellant's answer, and, if so, whether or not appellee breached such contract, and the amount of damages resulting therefrom, if any, were submitted to the jury under instructions asked by the appellant. They were correctly submitted, and we deem it unnecessary to discuss the evidence, the substance of which we have set forth, for it is clear there was substantial testimony to sustain the verdict.

The appellant contends that the court erred in modifying its prayer for instruction No 5 by adding the words "if any" to such prayer, as above set forth. The appellant argues that this instruction, as thus modified and given, when taken in connection with appellee's prayer for instruction No. 8, was prejudicial to the appellant. Appellee's prayer for instruction No 8, which the court gave, is as follows: "You are instructed that, if you find for the defendant upon its claim for damages by reason of a breach of contract by the plaintiff, if you find there was a contract and a breach, you will estimate from the evidence the difference between what the trade of the Culp Bros. Piano Company was actually worth in the place where the breach of contract was, if any, and what it would have probably been worth to them if the plaintiff had strictly complied with his agreement, if he made any such agreement, and the difference you will consider as damages." The appellant objects to the language "probably been worth" as used in this instruction. The word "probably" should not have been used in the instruction, but this word, as well as the words " if any," in instruction No 5, were only intended by the court to indicate to the jury that it was an issue for them to determine as to whether or not any damages had resulted to the appellant by a breach of the contract on the part of the appellee, if there was a contract, and if appellee violated the same. To say the least, if appellant conceived that this phraseology was calculated to mislead the jury to appellant's prejudice, it should have specifically objected to this language.

The appellant further contends that the court erred in giving appellee's prayer for instruction No 7, which is as follows: "You are instructed that, as to the defendant's claim for a recoupment by reason of having paid additional income taxes for the years mentioned in the cross-complaint, you must find by a preponderance of the evidence that plaintiff made an express agreement to pay a certain portion thereof, and that such agreement, if any, was a part of the contract to sell his stock in the company, and supported by a valuable consideration. In this connection you are instructed that the fact that the plaintiff was a member of the firm of the Culp Bros. Piano Company, and owned stock therein, would not impose any legal obligation upon the plaintiff to pay any additional income tax after he sold his stock, without an express contract to so do, as between the plaintiff and defendant in this case."

This instruction, taken in connection with the instruction given on the same subject at the instance of the appellant, correctly declared the law applicable to the facts adduced on this issue. See *Quinn* v. *McClendon*, 152 Ark. 271. The Federal income tax on the income of the corporation was primarily the debt of the corporation, and there is no legal obligation upon the stockholders, after they have sold their shares of stock in the corporation, to pay the income taxes that had accrued and had not been paid prior to the sale of such stock, and, in the absence of an express agreement on the part of the stockholder at the time of the sale of his stock to pay his proportionate share of such taxes, he would not be liable to the purchasers of his stock for such taxes. The taxes are not laid upon the stock, but on the corporate income.

The appellant contends that the court erred in giving appellee's prayer for instruction No 5 as follows: "You are instructed that, to enable the defendant to recover upon its claim for damages by reason of a breach of contract alleged to have been made by the

plaintiff to not engage or be interested in the music business in certain localities, the defendant must show, by a preponderance of the evidence, that such a contract was made, and it was made with reference to and in connection with the sale of a business or profession or interest therein, and the good will thereof, for a valuable consideration, and that such a sale and agreement was such as would give the defendant the legitimate use of something acquired by the purchase, *and not merely an agreement to stifle competition,* and that the plaintiff violated the terms of such an agreement." The appellant objects to the use of the words, "and not merely an agreement to stifle competition," its contention being that there was no issue as to whether or not the contract, if made, was to stifle competition, the only issue being as to whether such agreement was made. We concur with appellant's counsel that there was nothing in the pleadings and nothing in the proof to warrant a submission to the jury of an issue as to whether or not the alleged contract to purchase the good will of appellee at Hartford was in total restraint of trade, or to stifle competition. But the instruction, when considered as a whole, is not susceptible of the interpretation which learned counsel for appellant place upon it. It occurs to us that the design of this instruction was not to submit to the jury the issue as to whether or not the alleged contract was made by the appellant and the appellee to suppress the business of the appellee and to stifle competition against the appellant. On the contrary, the manifest purpose of the court in giving the instruction was to submit the issue as to whether or not there was a contract between the appellant and the appellee by which the appellant purchased appellee's good will in the music business at Hartford, and acquired thereby the right to have the appellee desist from that business at Hartford and in the towns mentioned as the particular trade territory of that business.

This court has often held that "contracts in partial restraint of trade with reference to a business or pro-

fession, where ancillary to the sale of the business or profession and the good will thereof, are valid and enforceable to the extent reasonably necessary for the protection of the purchaser." *Shapard* v. *Lesser,* 127 Ark. 590, and cases there cited. See aso *Patterson* v. *Rogers,* 128 Ark. 222; *Wakenight* v. *Spear & Rogers,* 147 Ark. 342; *Kimbro* v. *Wells,* 112 Ark. 126. We are convinced that the court did not intend by its instruction No. 5, given at the instance of the appellee, to submit or suggest to the jury that there was a question as to whether or not the contract, if made, was a valid one, and binding upon the parties. The instruction, properly construed, is in harmony with the doctrine of the above cases, and is not abstract. Certainly, learned counsel for the appellant, if they conceived that the use of the words "and not merely to stifle competition," had the effect which they now contend these words had, should have urged this specific objection in the court below.

Instruction No 1, given at the instance of the appellant, and also instruction No 5, as modified and given, show clearly that the court did not intend that its instruction No 5, given at the instance of the appellee, should have the meaning which counsel for appellant contend it had. Such interpretation would make the instructions conflict, but, when the instructions are considered together, there is no real conflict between them. The real issue was whether or not the appellee contracted with the appellant to go out of the music business at Hartford and the surrounding trade territory, and turn over the good will of such business to appellant, and whether or not he violated such contract, and, if so, the amount of damages, if any, growing out of such breach. These were all issues of fact. They were submitted to the jury, under instructions free from prejudicial error to the appellant, and the verdict of the jury on these issues is conclusive here.

The record, on the whole, presents no reversible error, and the judgment is therefore affirmed.