HANDFORD *v.* HANDFORD.

4-9332                                                                    234 S. W. 2d 764

Opinion delivered December 18, 1950.

*Chas. F. Cole,* for appellant.

*J. J. McCaleb,* for appellee.

GEORGE ROSE SMITH, J.   This suit arises out of a contract by which the appellee, Foster Handford, sold a sign business, including fixtures, supplies, equipment,

and good will, to his brother Charles, the principal appellant. Charles paid $10,000 in cash and gave notes for the balance of $6,000. This action was brought by Foster to obtain judgment on the notes and to foreclose a chattel mortgage on the assets of the business. In his answer Charles asked damages in the sum of $5,000 for violations of a clause in the contract by which Foster had agreed not to engage directly or indirectly in the sign business for a period of five years in ten specified counties. The chancellor fixed the damages at $100, credited that amount on the debt, and ordered foreclosure unless the balance were paid before the next day of court, an interval of about a month.

The evidence supports the chancellor's finding that Foster breached his contract "to some extent." Foster had owned sign shops in Batesville and Harrison. He sold the former to Charles and several months later sold the latter to four of his employees at Harrison, giving them permission to continue to use the name Foster Handford Sign Shop. The purchasers of the Harrison concern are shown to have made two sales under their trade name in the territory denied to Foster under his contract with his brother. It was also shown that Foster was bound to maintain certain signs for former customers and employed some one other than Charles for part of this work. Foster testified that at first he turned 'some of this work over to Charles, but he was dilatory in looking after it and charged more than Foster considered reasonable. It is not contended that Foster received any additional compensation for carrying out his maintenance contracts.

The appellant's chief insistence is that the trial court should have canceled the notes for fraud in their procurement. The answer asserted that Foster's violations of his contract constituted fraud, but there was no proof of anything except the isolated breaches that we have mentioned. The mere fact that a party to a contract subsequently violates one of its provisions does not necessarily prove that he executed the agreement with such a fraudulent intent as to warrant rescission. The burden was on Charles to prove the charge of fraud, and circumstances

consistent with an honest intent are not enough. *Stutt-gart Rice Mill Co.* v. *Lockridge,* 185 Ark. 340, 47 S. W. 2d 596. The chancellor expressly found that Foster did not act in bad faith, and the preponderance of the testimony supports this conclusion.

There being no right to rescission, the remedies available to Charles are upon the contract. In cases of this kind the usual remedy is an action for damages to compensate past violations and for an injunction against future ones. *Bledsoe* v. *Carpenter,* 160 Ark. 349, 254 S. W. 677. In the present case there has been no request for injunctive relief.

The purchaser is entitled to such damages as will reasonably compensate him for the loss occasioned by the seller's violation of the agreement. *Culp Bros. Piano Co.* v. *Moore,* 162 Ark. 292, 258 S. W. 326. In that case we approved an instruction fixing the damages as the difference between the worth of the business in view of the seller's breach of contract and its worth had there been no breach. In the case at bar no testimony was offered touching upon this method of computing damages.

In the *Bledsoe* case, *supra,* we adverted to the amount of business lost by the vendee as a basis for measuring his right of recovery. This is the only yard-stick that the chancellor could have applied on the record in this case. There was testimony, not contradicted, that the total profit made on the two sales made by Foster's successors at Harrison was only $65. Even if we assume that Foster should have employed Charles for the maintenance work there is nothing to show its monetary value, except Charles' testimony that he was offered $60 but considered it a $125 job. In these circumstances we cannot say that the chancellor's allowance of $100 as compensatory damages was error.

Affirmed.