SPRINGFIELD & MEMPHIS RAILROAD COMPANY V. ALLEN.

1. EVIDENCE:  *Receipt given under protest.*

A receipt is only *prima facie* evidence of what it imports, and may be explained or contradicted by the party signing it; but a settlement and receipt in full of an unliquidated demand, when made with a complete knowledge of all the circumstances, is a bar to a subsequent action upon the demand, although the creditor accepts the amount paid under protest and threats of suit for a balance claimed to be due him.

APPEAL from *Fulton* Circuit Court.
Hon. R. H. POWELL, Circuit Judge.

*Caruth & Erb,* for appellants.

A written receipt in full is evidence of the highest and most satisfactory character, and when given with full knowledge of the facts and circumstances, and there is no fraud, misrepresentation, mistake or imposition, it will bar a recovery, though given for a less sum than the party claims. *89 Ill., 212.* The burden of proof invariably rests on the party seeking to explain it. *44 Ill , 425.*

A receipt in full, in settlement of a disputed claim, with full knowledge of the circumstances, and no fraud, imposition or mistake, is a bar to an action. *1 Esp., 172; 1 Camp., Alner v. George; 9 Conn., 401; 42 Ark., 61.*

*Robert Neill,* for appellee.

The only instruction given for plaintiff was certainly the law. All the declarations asked by appellant were given, and they were as favorable as the law warranted. The jury evidently believed Allen, and the evidence was sufficient to sustain the verdict; and where there is any evidence to sustain it, this court will not reverse.

COCKRILL, C. J.   While the work of constructing the Springfield & Memphis Railroad was in progress, the appellee furnished meat to the laborers under a contract with Patrick & Reid, the chief contractors.   He was to be paid 7 and 8 cents a pound according to quality, payments to be made monthly by Patrick & Reid upon orders drawn upon them by the sub-contractors for the meat furnished to them.   It was a part of the original agreement that these orders should be discharged by Patrick & Reid at the end of each month by the payment of 10 per cent. less than their face; and this course of settlement was uniformly pursued. Patrick & Reid, however, subsequently surrendered their construction contract to the railroad company, and assigned all of their sub-contracts to it.   One Luyster assumed control of the work of construction on behalf of the company, and conducted affairs just as Patrick & Reid had been doing. He and Allen had a conference about the contract to furnish meat, but it turned out when a settlement was to be had, that they disagreed about the terms of the contract, Luyster contending that the terms of Allen's contract with him were the same as the terms of the contract with Patrick & Reid, and that the company upon the payment of the meat account was entitled to a discount of 10 per cent.   Allen contended that the latter condition was not in the new contract.   Luyster declined to pay anything on the account unless the discount was made, and Allen refused to sign a receipt in full upon the payment of less than the face value of his claims.   He was in debt, however, and anxious to secure a speedy payment, so he returned in the afternoon of the same day to Luyster's office, submitted to Luyster's demand for the discount, accepted an amount less than he claimed, and signed a receipt for the full amount, protesting that it was less than was due and threatening to sue the company for the discount.   This was in October, and suit

was instituted by him in the following March, and he obtained judgment.

Luyster and one of the firm of Patrick & Reid, who were the only witnesses sworn besides Allen, gave a much more favorable version of the whole matter for the company than that above detailed, both stating that it was expressly agreed between Allen and Luyster that the discount should be made; that the company would pay no more than Patrick & Reid had done, and that Allen's only objection in the end was that he was not making money on his contract. Reid testified that he was present when a settlement was made between Luyster and Allen in September before the final settlement, and that Allen acceded, as he had formerly done, to the discount; and Luyster says that at the final settlement, when the money was paid and the discount in controversy retained, Allen made no protest but appeared satisfied and signed the receipt without demur, his claim for the allowance of the benefit of the discount having been asked and refused before that time. It was the province of the jury, however, to weigh the testimony, and if, in any view of it, the appellee is entitled to recover, the verdict and judgment will not be disturbed.

It is certainly true that a receipt is only *prima facie* evidence of what it imports, and may be explained or contradicted by the party signing it, and if that were all of this case, it would be apparent that Allen's action was not barred by the receipt he signed. But here was a claim or several claims, the justice of which was denied, and the amounts due upon them were in dispute. The debtor, in effect, said to the creditor: "I will pay you a certain sum on your disputed claims provided you will take it in satisfaction of the whole." While the offer stood in this form, there was but one of two courses open to the creditor—either to decline the proffer or accept it with the condition attached.

EVIDENCE: Receipts under protest.

Springfield & Memphis Railroad Company v. Allen.

It was competent for him to receive the amount in discharge of his debt, and the receipt that he executed is presumptive evidence that he did so. A settlement and receipt in full of an unliquidated demand, when made with complete knowledge of all the circumstances, is a bar to a subsequent action upon the demand. *Bristow v. Eastman, 1 Esp., 172; Alner v. George, 1 Camp.,* ——; *Fuller v. Critten, 9 Conn., 401; Thompson v. Lemoyne, 5 Ark., 312.* The bar does not rest upon the written receipt, but upon the acceptance of the sum paid and received, the writing being only one of the modes of showing the intention of the parties.

After the voluntary adjustment of a matter in dispute, the contest is ended and the disputed question cannot again be raised by the parties. Compromises avoid litigation and are encouraged by the law, and, when legally made, they are binding and are not disturbed by the courts.

Settlements under protest The settlement, in this case, was made without intimidation, fraud or concealment, and Allen's protest could not have the effect to qualify the absolute surrender of his claims, and to abrogate the acceptance of the condition upon which the money was paid. It required the assent, express or implied, of Luyster to effect this. *McGlynn v. Billings, 16 Vt., 329; Miller v. Holden, 18 Ib., 337.* But it does not appear that Luyster ever occupied any attitude but that of offering Allen the sum paid in full satisfaction of his demand. The receipt made a *prima facie* case against Allen, and the burden of proof was upon him to overturn it. *McGlynn v. Billings, sup.,* is in point.

In *U. S. v. Adams, 7 Wall., 463,* a party who received from the government a less amount than was actually due him on a disputed claim, and gave a receipt in full for the amount, under protest, was held to be barred by the act, notwithstanding his protest. In *Savage v. U. S., 92 U. S.,*

*382*, where legal-tender notes were accepted by the holder in lieu of gold in payment of treasury certificates, payable in gold alone, a protest and threat of asserting claim in the courts for the difference in value of the two mediums of payment accompanying the act, the court say the protest was a mere *ex parte* act, without legal efficacy to qualify the voluntary surrender of the treasury notes and acceptance of the legal tender. The same may be said of the surrender of his claims by Allen, and the acceptance of money offered him in satisfaction.

That his pressing necessities did not amount to duress, is clearly stated in the language of Judge Miller, under circumstances similar in that respect to this: "Authorities are cited to show that where, under peculiar circumstances, property is withheld from the owner and he is forced to pay some unjust demand to obtain possession of it, he can afterwards maintain a suit for the money so paid. But no case can be found, we apprehend, where a party who, without force or intimidation, and with a full knowledge of all the facts of the case, accepts on account of an unliquidated and controverted demand, a sum less than what he claims and believes to be due him, and agrees to accept that sum in full satisfaction, has been permitted to avoid the act upon the ground that it was duress. If the principle here contended for be sound, no party can safely pay, by way of compromise, any sum less than is claimed of him, for the compromise will be void for duress. The common and praiseworthy procedure by which business men every day sacrifice part of claims, which they believe to be just, to secure payment of the remainder, would always be duress, and the compromise void." *U. S. v. Child, 12 Wall.*, *232*.

Viewing the testimony in the light of the principles announced, the verdict has nothing to rest upon, and the

*Duress.*

judgment must be reversed and the case remanded for a new trial.