## CONTINENTAL NATIONAL BANK OF CHICAGO

### v.

### M. CORNHAUSER & Co.

*Negotiable Instruments—Checks—Certification—Insolvency of Bank.*

1. The rules of law governing commercial paper should be general, such as are convenient and just in business in the mass, and not subject to qualification and uncertainty because of the effect of their application in particular instances.

476    APPELLATE COURTS OF ILLINOIS.

VOL. 37.]    Continental Nat. Bk. of Chicago v. Cornhauser & Co.

2    The certifying of a check at the instance of the payee takes the amount thereof out of the hands of the maker, and in case of the insolvency of the bank upon which it is drawn, the loss if any falls upon the payee.

3.    Where the drawer of a check delivers it already certified, the relations of the payee or holder and the drawer are not affected by the circumstance that the check is certified; their duties and obligations toward each other remain the same as they would have been had the check not been certified.

4.    Where the payee of a check receives it from the drawer, in the same place where the bank on which it is drawn is located, the payee has all the banking hours of the next day in which to present it, in order to hold the drawer responsible for non-payment.

[Opinion filed December 11, 1890.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. CAMPBELL & CUSTER, for appellant.

Messrs. KRAUS, MAYER & STEIN, for appellee.

The Illinois cases cited by appellant, viz.: Bickford v. First National Bank, 42 Ill. 238, Rounds v. Smith, 42 Ill. 245, and Brown v. Leckie, 43 Ill. 497, furnish no guide in the determination of the question under consideration. If appellee had had the check certified before the same was delivered to appellant, we would certainly not contend that appellant could not recover in this action the amount of the check. The Continental National Bank had the undisputed legal right to take from the defendant a check in payment of the note, and to take until the next day, October 2d, to pass the check through the clearing-house for payment. Had it done so the present litigation would not be before this court. The agent of appellant, however, "acting under the authority and directions of the plaintiff," had the check certified at the Traders Bank; if this "agent" of the plaintiff had, at the time he presented the check to such Traders Bank for certification on October 1, 1888, demanded payment of the same, said Traders Bank would have paid it. Appellant, however, argues in its brief (page 10) that "the mere fact that appellant's clerk procured the check to be certified, should not deprive appellant of his cause of action, unless, in so doing, appellant did something which

put appellee in a worse position, or unless it omitted to do something which it was incumbent upon it to do." We know of no such principle by which the rights of litigants are determined. If there is even a precedent in support of that position, we shall be glad to have it pointed out. The question is not whether appellee was put in a worse position by what appellant did or omitted to do. When the Continental National Bank authorized and directed its agent to collect payment from appellee of the latter's note, and took from the latter its check, stamped the note paid, and then took the check to the Traders Bank for certification, it created a legal status upon which the court must pass, independent of whether appellee was put in a better or worse position. If the doctrine thus advanced by appellant had any controlling force, " novation" would be substantially obliterated from our jurisprudence. If A is indebted to B and B to C in the same amount, and C accepts in lieu of his claim against B, B's claim against A, even appellant would not seriously contend, that because A failed before his debt to B matured, that therefore C's debt would be revived against B, because B was put in no worse position by reason of A's failure to pay C. The Traders Bank, as shown by the stipulation, owed appellee on October 1st, an amount in excess of the check in question. The amount of the check was charged up against appellee. To that extent the Traders Bank was no longer a debtor of appellee. Appellant, by procuring the check to be certified, made the Traders Bank its immediate debtor to the amount of the check. Other than the mere quotation *supra*, from appellant's brief, we have looked in vain for a reason therein to support the conclusion to which it asks this court to come. Appellant, in discussing the question that the " drawing of a check   *   *   * is an appropriation of the amount therein named to the use of the drawee (payee) and that the drawee (payee) may sue therefor in his own name," says that " the law as thus laid down, differs from that of many other States, and this fact should be borne in mind in the consideration of many cases which will be quoted by appellee's counsel." This reasoning is doubtless meant to break the force of the " many cases which will be quoted by appellee's counsel."

478    APPELLATE COURTS OF ILLINOIS.

VOL. 37.]    Continental Nat. Bk. of Chicago v. Cornhauser & Co.

In Borne v. First National Bank (Supreme Ct. of Ind., April 2, 1890), 24 N. E. Rep. 173, the court cites, approves and follows the decisions of our Supreme Court in Bickford v. Bank, Rounds v. Smith, and Brown v. Leckie. At the same time the court says:

"We agree with the appellant's counsel that the drawer of a check is released, if the holder, instead of presenting it for payment himself, procures it to be certified by the bank on which it is drawn. If the holder elects to procure the certification of the check, it becomes in his hands substantially a certificate of deposit. By his own act he makes the bank his debtor and releases the drawer of the check. The reason for this rule is that the moment the check is certified the funds cease to be under control of the original depositor, and pass under the control of the person who procures the certification of the check drawn in his favor. * * * But it is very clear that the authorities to which we have referred do not directly rule this case, for here the holder did not procure the certification of the check. All that he did was to accept the check in the ordinary course of business. Nor do we regard this case as within the sweep of the reasoning of the courts in the cases to which reference has been made. Here the holder accepted the check as it was offered, and did nothing to make the drawee its debtor. The principle which gives force and strength to the decisions referred to, fails entirely where there is no act done by the holder of the check, save that of receiving it in the form in which it is presented; for the element which sustains these decisions is that the holder, by procuring the certification of the check after he becomes the owner, voluntarily makes the bank upon which it is drawn his debtor, thus releasing the drawer. It is in such a case the holder's own act that changes the relation and situation of the parties."

The case just cited clearly defines the distinction between the drawer and the payee having the check certified. Much further interesting and apt quotation might be made from the above case.

In First Nat. Bank v. Leach, 52 New York, 350, the court

squarely holds that where the holder of a check presents the same to the drawee when due, and procures it to be certified, instead of paid, it is between him and the drawer a payment, and the latter is discharged from liability thereon. Judge Peckham, delivering the opinion of the court, says: "It is entirely clear that the acceptance of a time draft before due does not operate as a payment as respects the drawer. Its only effect is to make the acceptor the primary party to pay the draft; but the parties to a certified check, when certified, occupy a different position. There the money is due and payable when the check is certified. The bank virtually says, 'That check is good. We have the money of the drawer here ready to pay it. We will pay it now, if you will receive it.' The holder says, 'No, I will not take the money. You may certify the check, and retain the money for me until this check is presented.'

"The law will not permit a check when due to be thus presented and the money to be left with the bank for the accommodation of the holder, without discharging the drawer. The money being due and the check presented, it is his own fault if the holder declines to receive the pay, and for his own convenience has the money appropriated to that check, subject to its future presentment at any time within the statute of limitations."

GARY, J. These parties are both corporations. In the language of the appellant's brief the question in the case is, "Ought the bank (to) be barred of its action because its agent procured the check to be certified, when he might have got the money?" No question is made that the action of the agent was not the action of the bank; the only claim by the appellant is that procuring the check to be certified had no effect upon the relations of these parties to each other.

The circumstances were that the bank had for collection a note made by the appellee, due October 1, 1888, not payable at the bank, and sent its agent to collect it. The appellee gave to the agent its check for the amount of the note on the Traders Bank of Chicago. The agent, in returning to the appellant bank, stopped at the Traders and had the check cer-

480    APPELLATE COURTS OF ILLINOIS.

VOL. 37.]    Continental Nat. Bk. of Chicago v. Cornhauser & Co.

tified by that bank, which then charged it up to the account of the appellee. The agent might have had the money upon the check if he had then required it. All this happened about noon October 1, 1888.

The next day the Traders, being insolvent, did not open its doors for business, and the appellant now seeks to recover from the appellee the residue of the amount due on the check, unpaid from the assets of the Traders Bank. The case is of first impression in this State. It has been held several times that when the drawer of a check delivers it already certified, the relations of the payee or holder and the drawer are not affected by the circumstance that the check is a certified check; their duties and obligations toward each other remain the same as they would have been had the check not been certified. Bickford v. First Nat. Bk., 42 Ill. 238; Rounds v. Smith, Ibid. 245; Brown v. Leckie, 43 Ill. 497.

And the last case also holds that whether the bank on which the check is drawn actually charges the amount of the check to the account of the drawer or not, is immaterial.

The general rule of law, that where the payee of a check receives it from the drawer, in the same place where the bank on which it is drawn is located, the payee has all the banking hours of the next day in which to present it, in order to hold the drawer responsible for non-payment, is not disputed. The position of the appellee is that, although the appellant might have delayed the presentation of the check until October 2d, and if not then paid, held it responsible, yet as in fact it did present it and have it certified October 1st, it was bound then to take the money, or leave it with the Traders Bank, at the risk of the appellant. And in this position it is sustained by all the authority there is upon the subject. First Nat. Bk. v. Leach, 52 N. Y., 350, and many cases cited in Boon v. First Nat. Bk., 123 Ind. 78.

There is good reason for this doctrine. If the appellee during the business hours of the afternoon of October 1st, had become suspicious of the Traders Bank, and this check had not been certified, it might have drawn its funds from the bank, for it paid all that day. But this check being certified took the amount of it out of its control. Brown v. Leckie, 43 Ill. 497.

The appellant, having the opportunity, did not, and the appellee could not, take the money while it might have been obtained. And this condition was the result of the action of the appellant; it therefore should bear the consequence.

It is true, the same condition would have existed had the check been certified before it was delivered by the appellee; but then it would have been the result of their action, and justly the consequence would have fallen upon them.

The rules of law governing commercial paper are, and ought to be, general; such as are convenient and just in business in the mass, and not subject to qualification and uncertainty because of the effect of their application in particular instances.

There is nothing in this case to show that the credit of the Traders Bank was shaken during the day on which the check was certified. In the case cited from New York the bank failed on the same day that the check was certified at the instance of the holder, and still it was held that the drawer was discharged. Says Judge Peckham: "If he (the drawer) apprehended damages from the suspected failure of the bank, he could not draw out that money, because it had already been appropriated by means of the check thus certified."

In Wood v. Merchants' S. L. & T. Co., 41 Ill. 267, where a note held by that company, made by Wood, payable at the banking house of J. G. Conrad, was presented by the company when due at the banking house of Conrad, and certified to be "good," the Supreme Court in holding Wood liable say: "The whole case, in the view we take of it, turns on this proposition: Had the holder this right (to receive the money) and had Conrad any authority whatever to pay the note, out of the funds on deposit in his bank to the credit of the makers?" And answering this in the negative is made the ground of the decision that Wood was not discharged.

It can scarcely be doubted what the decision of the Supreme Court, as then constituted, would have been on this case if it had been presented to them. The court below decided that the appellee was discharged, and that decision is affirmed.

*Judgment affirmed.*