# Central Guarantee Trust & Safe Deposit Company v. White, Appellant.

| 206 | 611 |
| 30 SC | 273 |
| 206 | 611 |
| 218 | 94 |
| 206 | 611 |
| e220 | 215 |

*Practice, C. P.—Trial—Instructions—Points.*

Where a trial judge has given a binding direction as to the verdict, what he says to the jury in explanation or comment on the case, and his refusal to answer points, become entirely immaterial.

Points are statements of the rules or principles of law, specially applicable to the case, and therefore given to the jury as guides in applying the law to the facts. But where the jury has no such duty and the judge himself determines the combined result of the law and the facts as presented, points become immaterial.

*Banks and banking—Checks—Certified checks.*

A check by a depositor on his account certified by the bank becomes an

obligation of the bank to the payee or holder, and in the absence of fraud or similar exceptional circumstances the amount is as much withdrawn from the depositor's account as if the money had been paid over the counter.

*Lunacy—Signing of check—Evidence—Province of court and jury.*

On an issue to determine whether a person who signed a check had sufficient mental capacity at the time of the signature, three physicians testified that he had been suffering a mental and physical decline for several years from senile paresis, and in their opinion was not competent to transact business at the time he drew the check. They all, however, admitted that the alleged incompetent took care of himself, and went about town attending to all his ordinary business. None of the physicians testified to a single unbusinesslike act on the part of the maker of the check. The testimony as to the mental capacity of the maker was clear and positive. *Held*, that the court below committed no error in not submitting to the jury the evidence of the maker's mental incapacity.

Argued May 20, 1903. Appeal, No. 106, Jan. T., 1903, by defendant, from judgment of C. P. Lancaster Co., Aug. T., 1899, No. 84, on verdict for plaintiff in case of Central Guarantee Trust & Safe Deposit Company v. William S. White and Henry A. White, Administrators of William White, deceased. Before MITCHELL, DEAN, FELL, BROWN and POTTER, JJ. Affirmed.

Issue to determine the validity of a check.

From the record it appeared that the check in controversy was drawn by William White on March 2, 1899, on the Lancaster Trust Company, in the sum of $1,500. The check was drawn in favor of a son who lived in Harrisburg and certified by the Trust Co. Shortly after the check was given, White removed to his son's home in Harrisburg, where he died on March 26, 1899. After the father's death, Thomas C. White, the son, presented the certified check to the Central Guaranty Trust and Safe Deposit Company of Harrisburg, and received a cashier's check for $1,500. In the meantime other sons of the decedent notified the Lancaster Trust Company not to pay the check signed by their father. When the check was presented payment was refused. Subsequently the trust company of Harrisburg brought an action against the Lancaster Trust Company to recover the amount of the check. Thereafter the Lancaster Trust Company paid

the money into court, and an issue was framed between the Central Guarantee Trust & Safe Deposit Company of Harrisburg and the administrators of William White, to test the validity of the check and to determine the ownership of the fund paid into court. The evidence as to the maker's alleged mental incapacity at the time he signed the check is summarized in the opinion of the Supreme Court.

The court gave binding instructions for plaintiff. Defendant appealed.

*Errors assigned* were (1) in giving binding instructions for plaintiff; (3–11) various instructions.

*Thomas B. Holahan* and *B. F. Davis,* for appellant.—The question of the maker's incapacity should have been submitted to the jury : Samuel v. Marshall, 3 Leigh, 567.

*W. U. Hensel* and *H. M. North,* with them *John E. Patterson,* for appellee.—There is no evidence whatever justifying the submission to the jury of the question of fraud or want of capacity : Elcessor v. Elcessor, 146 Pa. 359 ; Bank v. Wirebach, 97 Pa. 543 ; Dickinson v. Dickinson, 61 Pa. 401 ; Zell v. Com., 94 Pa. 258 ; Shreiner v. Shreiner, 178 Pa. 57 ; Eddey's App., 109 Pa. 406.

OPINION BY MR. JUSTICE MITCHELL, July 9, 1903 :

The learned trial judge having given a binding direction as to the verdict, what he said to the jury in explanation, or comment on the case, and his refusal to answer points, became entirely immaterial. Points are statements of the rules or principles of law, especially applicable to the case, and therefore given to the jury as guides in applying the law to the facts. But where the jury has no such duty and the judge himself determines the combined result of the law and the facts as presented, points become immaterial. " The correctness of the direction to the jury to find in one way or another depends on the facts admitted or established, and if the conclusion is right on the facts no error is committed though the reasons assigned are insufficient or even incorrect : " Meyers v. Kingston Coal Co., 126 Pa. 582.

The assignments of error in the present case from third to eleventh inclusive are therefore immaterial, and will be disregarded.

A check by a depositor on his account certified by the bank becomes an obligation of the bank to the payee or holder, and in the absence of fraud or similar exceptional circumstances the amount is as much withdrawn from the depositor's account as if the money had been paid over the counter. The check in controversy was certified in the regular course of business during the lifetime of the drawer. All questions of consideration, etc., raised by the appellant are irrelevant.

The basis of appellant's case is that the check was obtained by the payee by fraud and imposition on an imbecile father. There was no evidence of the alleged fraud and imposition beyond what might be imputed by inference from the fact that a son whose relations had not for some years been close, received nearly the whole of the father's estate a short time before the latter's death. But the undisputed circumstances exclude any such inference. The father who had lived for many years in Lancaster had reasons for leaving there and going to live with the son in Harrisburg which ought to satisfy a jury if it were any of the jury's business to pass upon them. But unless he was non compos it was his right to change his residence and prefer one of his sons, and neither his other children nor a jury have any standing to question his action.

The only real question in the case therefore is whether there was sufficient evidence of mental incapacity on the part of the father, to require the submission of that matter to the jury. Substantially the whole evidence on the part of defendants on this point was the testimony of three physicians that the deceased had been suffering a mental and physical decline for several years from senile paresis, and in their opinion was not competent to transact business at the time he drew the check in controversy. Dr. Snyder testified that he was called in to examine whether the decedent " was physically able to be removed to Harrisburg," and from that single visit (having never seen him before) was rash enough to express the opinion that he had not " mind enough to transact business or make a contract," and that he was suffering from " the imbecility of age." Dr. Davis had had the advantage of knowing the decedent for

twenty-five years and testified also that he was suffering from senile paresis and "had not sufficient physical and mental ability to transact business of any import," but admitted that "he went about and took care of himself," and that his condition "was about the same as it had been for possibly two or three years previous to that . . . . I think he was failing both physically and mentally for four or five years previous to that time." Dr. Eberman had also known the deceased for many years, and testified that he "was weak both bodily and mentally, had noticed that some time prior to the time I saw him in March his mind was giving way, probably due to paresis" which had "probably been going on for three or four years as far as I was able to judge from his case," and that there was a pronounced difference for the worse between his condition in March, 1899, and two or three years before. But the same witness also testified that the decedent "went about town" during the preceding two or three years, and that he, the witness, knew nothing of his business habits, and could not mention an unbusinesslike thing he ever knew the decedent to say or do. There was some other testimony, chiefly from interested members of the family as to lapses of memory, but not of importance enough to be recounted here. The foregoing is a full summary of the medical testimony on the subject of mental incapacity. It is weak of its kind, and its kind is the very lowest that is ever allowed in a court of justice. Standing by itself the admission that during all the period in question the alleged incompetent took care of himself, went about town attending to all his ordinary business, and the entire failure to show a single unbusinesslike act on his part would so far neutralize the theoretical opinions of the physicians as to his mental capacity, that if the judge had ruled it insufficient to go to the jury we could not have said he was in error. But in this case there was positive testimony to the contrary. The witness to the note testified to the circumstances of its execution by the decedent, his clear understanding of what was wanted, and sending for pen and ink to write his signature. It was shown that in the previous year he had conducted a suit for divorce without showing any indication of want of mental capacity, and the only disinterested witness, Hartmeyer, who had testified to facts of loss of memory was shown to have taken a deed

of conveyance from him within two years of his death. Other witnesses, including the physician who attended him in his last illness, testified to his mental competency. On the whole case if the jury had found a verdict against the plaintiff the court would have been bound to set it aside as clearly against the weight of the evidence, and that being so he was right in directing the verdict.

As the whole basis of the appellant's defense thus failed, the remaining assignments of error upon the admission of testimony do not need discussion.

Judgment affirmed.