JOY RICE MILLING COMPANY *v.* BROWN.

Opinion delivered January 12, 1925.

1. FACTORS—BAD FAITH—LIABILITY.—Where a milling company, in selling rice milled by it for the owners, was not acting in good faith, and sold at a price less than its market value, it was accountable to the owners thereof for its fair market value, whether it was authorized to sell or not.

2. FACTORS—BAD FAITH—EVIDENCE.—In an action by the owners of rice against a milling company to recover the market value of plaintiff's rice sold by defendant, evidence *held* to support a finding that defendant had not obtained the fair market value.

3. FACTORS—DUTY IN MAKING SALE.—It is the duty of a factor to exercise a sound and honest discretion to sell for the fair value or the market price of the goods, and, when a sale is made recklessly or in a manner to show that an honest effort was not made or reasonable diligence was not used to obtain the fair market value, the factor is held to account for the actual or fair market value.

4. ACCORD AND SATISFACTION—ESTOPPEL.—Where the owners of rice in the hands of defendant for milling cashed checks mailed to them in payment of the proceeds of sale of the rice, they had a right to assume that, even though the defendant had, without authority, assumed the function of factor in selling the rice, that duty had been faithfully discharged, and, upon learning to the contrary they were not estopped to demand the amounts legally due them.

5. FACTORS—MILLING CHARGE.—Where all the rice mills in the vicinity had a uniform charge for milling, all customers of defendant mill will be liable for such charge whether agreed to or known by them or not, regardless of the depreciation in value of the rice.

6. FACTORS—CONTRACT TO PAY DUES.—Where a contract between a rice growers' association and a milling company for milling the rice of members of the association provided that the members should pay so much per bushel to the company as dues of the association, such agreement was binding on members of the association, but not on those rice growers who were not members.

7. FACTORS—DEDUCTION OF ADVERTISING FEES.—Where a contract of a rice growers' association with a milling company provided for the collection of a small sum per bushel from members of the association to be used in advertising purposes, the mill company, on accounting for the value of the rice sold, should be allowed to deduct items which it had been required to account to the receiver of the association, which had became bankrupt.

8. APPEAL AND ERROR—EVIDENCE CONSIDERED.—Where several cases were consolidated by consent, and evidence, so far as relevant, considered in all cases, it will be so considered on appeal.

Appeal from St. Francis Chancery Court; *A. L. Hutchins*, Chancellor; reversed in part.

*Bogle & Sharp*, for appellants.

The notes signed by these parties were the final contract between the owners of the rice and the mill company. It is the only contract that is binding between the appellant and the appellees. 63 U. S. 22; 64 U. S. 23; 96 U. S. 544; 1 Greenleaf on Evidence, § 275; 104 Ark. 476; 83 Ark. 283; 125 Ark. 502. There is no merit in appellees' contention that, since the notes were made payable on demand, and appellant failed to make demand for their payment before it sold the rice pledged to secure the same, appellant was thereby precluded from enforcing the obligations or receiving benefits provided by the terms of the notes. C. & M. Digest, § 7836; 4 Ark. 210; 24 Ark. 359; 143 Ark. 498; 146 Ark. 192. There can be no question but that appellee, Geo. S. Heuckle, ratified the sale of his rice by accepting the benefit thereunder after being advised of the same. The acceptance by him of the check was a full and complete settlement of his account. 94 Ark. 158; 46 Ark. 217; 56 Ark. 37; 98 Ark. 269; 114 Ark. 559; 112 Ark. 219; 134 Ark. 36. As to the Smith cases: While he claims that he did not authorize the mill to sell the rice in which he was interested, there is positive proof on the part of the company that he did give positive instructions to sell all of his rice. After the sale the company prepared statements of the account of each of the plaintiffs with whom Smith was interested, and sent them to him with a check covering the balance due according to each statement, on the face of which was written "Payment in full for all rice tolled and sold," and also on the face thereof the number of each particular lot that was covered by the statement. Smith had this check certified by the bank on which it was drawn. Appellant was thereby discharged from all

further liability thereon.   C. & M. Digest, § 7954; 116 Ark. 1; 5 R. C. L. 44; 7 C. J. 705; 94 U. S. 343; 7 Bliss (U. S.) 193; 8 Fed. Case No. 4532; 10 Wall. (U. S.) 604; 77 Ala. 168; Am. Rep. 50; 117 Ill. 106; 7 N. E. 601; 57 Am. Rep. 855; 123 Ind. 78, 24 N. E. 173; 79 Me. 312; 29 Atl. 527; 156 Mass. 458, 31 N. E. 489; 82 N. Y. 1; 37 Ill. App. 475; 52 N. Y. 350; 206 Pa. St. 611, 56 Atl. 76.   The certification of the check was therefore payment in full of all that appellant owed appellees, and their complaints should have been dismissed.   New Orleans was the nearest market for rice to Wheatley, and the evidence shows that, at the time appellant sold appellees' rice, it was worth from 1 7/8 cents to 3 cents per pound at that place. What a few pockets of rice, sold locally, would have brought afforded no criterion by which the market price could be determined.   Where there is no adequate local market for a commodity, the market price at the nearest available market will control.   53 Ark. 17; 121 Ark. 150; 139 Ark. 302; 134 Ark. 284.

*C. F. Greenlee,* for appellees Murphy-Legg Land Co. *et al.*

*Trimble & Trimble* and *Mann & Mann,* for appellees Smith *et al.*

The bankruptcy proceeding in the matter of the Southern Rice Growers' Association, whether voluntary or involuntary, was equivalent to a breach of the contract between appellant and that association, and between appellant and the members of the association.   240 U. S. 581; L. R. A. 1917B, 580.   The charge for association fees and advertising was therefore properly denied the milling company.   Appellees are not estopped from recovering an additional sum above that represented by the check which Smith had certified.   Accord and satisfaction is a mixed question of law and fact.   In determining whether there has been an accord and satisfaction in any particular case, all the facts and circumstances affecting the case must be taken into account.   As to what constitutes an accord and satisfaction, see 1 C. J.

523. There is no accord and satisfaction unless the facts show that the minds of the parties have met upon the new agreement, and that the same has been carried into execution. *Id.* A written receipt is only *prima facie* evidence of its own recitals, and may be contradicted by parol testimony. 123 Ark. 24, 26; 56 Ark. 37; 90 Ark. 426. The question whether the creditor agreed to accept the amount offered in full satisfaction of the claim, is a mixed question of law and fact. 94 Ark. 158, 162. See also 14 L. R. A. (N. S.) 443 and notes; 1 R. C. L. 197, § 32; 16 Am. & Eng. Ann. Cases, 194, notes; 20 L. R. A. 785 and notes; 56 Ark. 130; 33 Ark. 572; 111 Ark. 529; 45 Ark. 290; 51 L. R. A. (N. S.), 315.

Smith, J. In 1920 appellant, Joy Rice Milling Company, hereinafter referred to as the company, was engaged in the milling of rice at Wheatley, Arkansas, and appellees were engaged in growing rice in that vicinity during that year. Some time prior to 1920 there had been formed an association known as the Southern Rice Growers' Association, hereinafter referred to as the association, the purpose of which was to advance the interest of rice growers by putting rice on the market most advantageously and by advertising and other propaganda to increase the consumption of rice as an article of diet.

The members of this association gave over to the officers thereof the control of their rice for purpose of sale, and the association itself, for the benefit of its members, entered into a contract with the company whereby the rice of the members should be milled by the company for a dollar per bushel and the by-products, and it was agreed that the company should collect for the association eight cents per bushel as membership dues, and should also collect five cents per bushel, which was to be expended by the association and the company for advertising and propaganda purposes. The contract between the company and the association required the company to make certain advances on the rice of the members which had been delivered to and milled by

the company, and, in consideration of this obligation, the right was given to the company to sell the rice of the owners to whom advances of money had been made. The contract between the association and the company contained the provision that the rice was to be sold only by and with the consent of the association, acting through its duly authorized agents, but the company reserved the right to sell the rice belonging to the members of the association and that of other owners to whom advances of money were made. Pursuant to the provisions of the contract, advances were made by the company to certain of the members of the association. The company also made advances to certain persons who were not members of the association, and these advances were evidenced by the promissory notes of the owners of rice to whom advances were made, and these notes conferred on the company authority to sell the rice of such owners at the best price obtainable and to deduct such advances and the interest thereon, and to account thereafter for any balance remaining due to the owner. There were a number of other rice owners, who were not members of the association and who had not borrowed money from the company, whose rice had been milled and was stored by the company.

The rice market was sluggish, and the price had depreciated during April and May, 1921, and the company had a large quantity of rice on hand at that time, and made sale of all the rice owned by the parties to this litigation. Indeed, the company appears to have sold all the rice on hand, and, about thirty days thereafter, rendered to each owner a statement showing the sale of his rice, and this statement was accompanied in each instance by a check payable to the owner, which recited that it was in full of the proceeds of the sale.

The sale thus made was not satisfactory to the owners, and they soon thereafter brought separate suits to recover the alleged market value of their rice. There were forty-six of these suits, but they were consolidated and tried together, and there was a general finding

for the plaintiffs that the rice had not been sold for the market value thereof, which the court found to be three and one-half cents per pound, and that the members of the association who had been charged with the items which the contract between the company and the association required the company to collect for the association should not be charged to the members thereof, for the reason that the association had, prior to April 15, been adjudged a bankrupt and had ceased to function, and there was no showing that the company had paid to the association these items, and the company, by its appeal, questions the findings of the court adverse to it.

It was contended by the plaintiffs in all the cases that an exorbitant milling charge had been made, that the charge of a dollar per bushel should not be allowed in stating the account; but the court found against all the plaintiffs on this issue, and charged a milling fee of a dollar per bushel against each of the plaintiffs, and they have prayed and perfected a cross-appeal on that question.

There are certain issues common to all the cases, and these we proceed first to consider.

It is first contended by the company that it had authority to sell the rice, and that it obtained the best market price therefor; and it further contends that, even though the testimony supports an adverse finding to it on those issues, there was an accord and satisfaction as to all the owners who accepted and cashed the checks tendered in payment of the sales made by it for the account of the owners.

After a careful consideration of the testimony we have reached the conclusion that, in the case of one or more of the owners, express authority to sell was conferred by written direction to that effect, and that authority to sell was conferred on the company in the notes which had been executed to it by the owners who had borrowed money from it directly. It is earnestly contended that authority existed to sell the rice of the owners who were members of the association, and that

this authority was conferred by the contract between the company and the association for its membership. But we do not think this contract conferred that authority, as sales could be made only by and with the consent of the officers of, the association acting for its members, and it is not contended that the consent of the officers of the association was obtained.

As to the owners who were not members of the association and who had executed no notes to the company, it is insisted, on behalf of the company, that authority to sell had been expressly conferred. The testimony on this issue is sharply conflicting, although, as we have said, it does appear that certain owners conferred this authority. As to the majority of the owners, we have concluded that the sale was made without authority so to do. Indeed, as to one of the largest owners of the rice sold by the company, one who was not a member of the association and who had borrowed no money from the company, the testimony shows that the sale was made over the protest of the owner, and at a much smaller price than the owner had contracted to sell a portion of his rice.

We have further concluded, however, that it is unimportant to differentiate between these owners, as we have concluded that the sale made by the company was not made in good faith, and was made at a price less than the market value of the rice, and, this being true, the company should be held accountable for the rice at its fair market value. This was the view of the trial court, as evidenced by the decree in the case, and we have concluded that this finding is not clearly against the preponderance of the evidence. On no other theory could judgment have been rendered in favor of all the plaintiffs, as there was authority to sell expressly conferred by some owners, and, in the cases of the makers of the notes, authorization to sell was there conferred, yet judgment was rendered in favor of those plaintiffs as well as in the cases of those who clearly had granted no such authority.

One of the largest owners testified that, a few days before the company claimed to have made the sale, he obtained samples of his rice, and stated at the time that he desired these samples to enable him to sell the rice in Chicago, to which city he was going in a few days for the purpose of selling his rice. This owner was in Wheatley, where the mill was located and the rice was stored, on the day his rice was sold, which was on Sunday. This owner represented himself and twenty others in whose rice he was interested, a fact known to the company, and the transaction involved many thousands of dollars, yet he was not notified that a sale of this magnitude was impending, and he testified that he rode from Wheatley to Memphis on the afternoon of the day of the sale with the manager of the mill and the purchasers of the rice, yet no intimation was given him that his rice had been sold, and he was not advised of that fact until after his return from Chicago. These purchasers were shown to have arrived in Wheatley on the noon train and to have left for Memphis on the afternoon train, between four and five in the afternoon, between which hours the alleged sale was consummated.

It is true this plaintiff admitted that the company had previously sold some of his rice; but he also testified that no sale had ever been made previously until the offer of the purchaser had been submitted to and approved by him.

On behalf of another of the largest owners, the Murphy-Legg Land Company, it was shown that a sale of two cars of rice, at a price of four cents per pound, had been made, and that the owner had given orders to the company to ship out that quantity of rice, yet these instructions were disregarded. This owner was not a member of the association, had borrowed no money, and the testimony shows very satisfactorily that this owner was selling its own rice, and had never authorized the company to make any sale on its account, and it was not advised of the sale of any of its rice until after it had ordered cars placed for the shipment of rice which

had been sold in Kansas City and Chicago. Upon being advised of the sale of its rice by the company, this owner filed suit in the chancery court to restrain the company from disposing of its rice, and obtained from the chancellor a temporary restraining order forbidding the company from disposing of the rice or from shipping it out. Although the company claimed to have shipped the rice before this order was obtained, a representative of the owner who went to the mill to demand the surrender of the rice discovered there rice belonging to his principal.

This is a circumstance which weighs heavily with us in considering whether the finding of the chancellor, that a grossly inadequate price was obtained, and one much less than might have been obtained, is clearly against the preponderance of the evidence. The owner had sold part of the rice for nearly twice the price at which the company sought to account for it, and, if the market price had been received, it would have been a matter of but little difficulty for the company to have replaced the rice the possession of which the owner was demanding. In settlement of this sale the company remitted the owner a check for $3,212.34 in full settlement of the proceeds of the rice; but this check was returned uncashed, and, when the owner brought suit to recover what the alleged to be the true market value of the rice, the company filed an answer admitting an indebtedness of $4,575.12.

We have concluded therefore that the finding of the court below that the company had not obtained the fair market price for the rice is not clearly against the preponderance of the evidence. We think there was such a reckless disregard of the rights and best interest of the rice owners as warranted the court in charging the company with the actual market value of the rice. The testimony shows that the company had apparently decided to dispose of all the rice on hand, and it did so rather summarily, and a portion of the rice was sold to another rice company, whose president was also the president of the appellant company.

The testimony is conflicting as to what the market value of the rice was; but the testimony shows that the screenings from the rice, which were used for feeding stock, sold at two cents per pound. The court found that the market value of fancy rice at the time of the sale was three and one-half cents per pound, and stated the account between the parties on this basis, and we have concluded that this finding is not clearly against the preponderance of the evidence.

As we have said, certain of the plaintiffs were members of the association, and the contract entered into by that association on their behalf with the company provided that the rice should be sold only by and with the consent of the association, acting through its duly authorized agent. Other owners had borrowed money and had executed notes, which conferred authority on the company to sell the rice of such owners; and still other owners had, by written direction, authorized the company to sell their rice; while other owners came within none of these classes, and their rice was sold without authority, and in one instance, as we have stated, over the protest of the owner and in violation of an order of the court forbidding that action.

We have concluded that it is unimportant to distinguish those cases, for the reason that the company should be required to settle with each owner on the basis of the actual market value of the rice, rather than on the basis of the price received.

The duty of a factor under the circumstances was stated by this court in the case of *Wynne* v. *Schnabaum*, 78 Ark. 402, to be to exercise a sound and honest discretion, and that, when this is done, the factor has discharged his duty, the measure of the duty being to sell for the fair value or the market price. But, when the sale is made recklessly or in a manner to show that an honest effort was not made and reasonable diligence was not used to obtain the fair market value, the factor is held to account to his principal for the actual or fair market value of the article sold. *Burke* v. *Napoleon Hill*

*Cotton Co.*, 134 Ark. 580; *Wynne, Love & Co.* v. *Bunch*, 157 Ark. 395.

What we have just said also disposes of the defense interposed by the company that certain of the owners cashed the checks which had been mailed them in payment of the proceeds of the sale of the rice. The checks mailed were for an undisputed amount due the respective owners. The money sent them was their own money, and the owners had the right to assume that, even though the company had, with or without authority, assumed the function of factor in selling the rice, that duty had been faithfully discharged, and, upon being advised to the contrary, the owners were not estopped to demand the respective amounts legally due them.

The court below allowed the company to charge the account of each of the plaintiffs with a milling charge of a dollar per bushel, and the plaintiffs have cross-appealed from that part of the decree. The testimony shows that, at the time when the price of the rice was high, the association had contracted on behalf of its members to pay a milling charge of a dollar per bushel, together with the by-products, and this was the price charged by all the mills, and was the price charged against the association members and all others. The testimony shows that this charge resulted in what appears to be an exorbitant profit to the company, in view of the depreciated price of the rice and the reduced cost of operating expenses of the mill. But this was the company's price to all persons, and it was the price charged by all other mills. It was the contract price agreed upon by many of the plaintiffs, and known to others, and the owners who had not agreed to pay this price, or were not advised what the price was, would have no right to demand that their rice be milled at less than the company's established price when the company did nothing to induce the belief on their part that they would be charged less than the customary price charged by the company and other mills engaged in the same business.

The company insists that it had the right to charge all owners with the association fees of eight cents per bushel and the fee of five cents per bushel for advertising purposes. As we have said, the contract between the association and the company did require the company to deduct for the association eight cents per bushel for association dues. This agreement was, of course, binding as to the members of the association, but it is not binding as to the owners who were not members of the association and who had not agreed to pay it.

The contract between the company and the association also required the company to collect from each member of the association five cents per bushel, to be expended in advertising purposes to extend the use of rice, and to expend itself, out of its own funds, a sum corresponding to the amount so collected from the members. But what we have said about the association dues is equally applicable to this item.

But the association became bankrupt on April 15, 1921, and it is urged that this fact terminated that contract, as the sales out of which litigation arose were made at a later date. The company insists, however, that it should be allowed to collect these fees, because it has been charged with them and will be held to account for them to the receiver of the association; that the association had, pursuant to the purposes of its organization, and in anticipation of realizing revenues which would be derived from its contract with the company and other similar contracts with other mills, expended money in advertising and operating expenses prior to the bankruptcy of the association, and that it will be called upon to account to the association for these items, which its contract with the association required it to collect from the members of the association.

If, in fact, the association did incur obligations upon the faith of the collections which the company agreed to make from the members of the association, the company may be required to account to the receiver of the association for the fees and dues which it should have

collected on the rice milled by it during the time the
contract between the company and the association was
effective, and, for this reason, the company should have
credit for such sums of money as it will be required to
account for to the receiver of the association, and the
decree of the court disallowing these items will there-
fore be reversed.

Of course, the company should not be allowed to
collect these items unless it has been required to account
for and pay them over to the receiver of the associa-
tion, and any recovery on this account against those
owners from whom this collection should have been made
will be limited to such sums as the company is held
liable for to the receiver of the association.

It follows, from what we have said, that the decree
must be affirmed on the cross-appeal of the plaintiffs, and
would be affirmed in its entirety but for the failure of
the court to take into account the membership fees and
the advertising charges which the company claims it
will have to pay over to the receiver of the association,
and the decree will be reversed for the purpose only of
adjudicating those items, and in all other respects it
is affirmed.

### OPINION ON REHEARING.

SMITH, J.   In the petition for rehearing it is pointed
out that no testimony was offered in support of the allega-
tions of the complaint in the suit filed by R. E. Short, and
it is insisted therefore that this case at least should
be reversed and dismissed.   It appears, however, as
has been said, that all these cases were consolidated and
were tried together, and the evidence of the various wit-
nesses was considered, so far as it was relevant, in all of
the cases.   This being true, the testimony should be con-
sidered in the Short case, and the testimony which
establishes the cases of the other plaintiffs also estab-
lished the case of the plaintiff Short.   There was no
question as to the quantity of his rice or its classifica-
tion as made by the report of the appellant company in

the account of sale, and the general finding made by the court below, and affirmed by us, inures to Short's benefit.

We have been asked to designate specifically the plaintiffs who should be charged with the association dues and the advertising fees if it be found, on the remand of the cause, that the company is entitled to recover on this account, and we do so.

The following persons were members of the association: C. W. Hewitt, Henry Schaefer, George Heuckle, C. C. Brown.

In addition, it appears that R. E. Short and the Goodwin Rice & Stock Farms borrowed money from the company and executed notes which directed and authorized the company to mill their rice in accordance with the terms of the contract between the company and the association, and these plaintiffs will therefore be classed in this respect with the association members.

It appears also that the Murphy-Legg Company executed in writing an agreement for a toll charge in accordance with the association contract, and that the rice of the Gates estate was ordered milled in accordance with that agreement. These two plaintiffs will therefore be also classed with the association members in respect to those items.

In all other respects the petition for rehearing will be overruled.