STUTTGART RICE MILL COMPANY *v.* LOCKRIDGE.

Opinion delivered March 7, 1932.

*W. A. Leach,* for appellant.

*Joseph Morrison,* for appellee.

BUTLER, J. On the 15th day of December, 1923, Lozier Lockridge, appellee, instituted this suit against the appellant, Stuttgart Rice Mill Company. In his complaint the appellee declared on a verbal contract alleged to have been entered into between himself and the appellant, acting through its president, J. C. Lloyd, by which he was to deliver to the appellant rice grown

in the year 1920, the same to be milled and sold by the appellant for his account. For this service appellant was to receive $1 per barrel and the by-products consisting of bran and polish; that appellant undertook to mill said rice immediately and to sell the milled product at once; that, as an inducement for appellee to enter into the agreement with the appellant, appellant represented that it could mill and sell the rice without delay, and that appellee would thereby be enabled to realize net more for his product than if he should sell it in the rough; that at that time there was an active market for rough rice; that he entered into this contract on or before the 15th day of November and began to deliver the appellant rice completing delivery on or before the 29th day of November, 1920; that on the date of his agreement and during the time of the delivery of the rice and for a considerable time subsequent thereto there was an active market for clean rice of the kind and grade of that which he had delivered to the appellant, and, if the appellant had performed its agreement, it would have been able to realize for appellee's account a net sum of $1.27 per bushel.

Appellee further alleged that, after the appellant had milled the rice, he demanded an accounting, which was not made until on or about the 29th day of March, 1921, at which time appellant accounted to appellee for $2,495.92, representing to him that this was all that appellant had realized from the sale of his product; that the appellant sold appellee's rice at a much higher figure than the price which it rendered on an accounting and fraudulently concealed the fact that it had sold rice at a higher figure, which, after all proper charges had been deducted, would have returned to appellee a net sum of $1.27 per bushel.

Appellee further alleged that, if the rice had not been sold at a figure sufficient to yield him the return aforesaid, appellant breached its agreement in failing to market the rice with reasonable promptness after the

same had been milled, to appellee's damage in the sum of $5,000.80, the difference between what he should have received had the appellant performed its contract with him and what it actually accounted for. Appellee further alleged that, until the appellant rendered him an accounting in March, 1921, he did not know that it had not sold his rice at the time it had agreed to sell it and did not know what actual disposition was made of the rice, but alleged that the appellant either sold it at a figure to yield him $1.27 per bushel net, fraudulently accounting to him for a different lot of rice, or that appellant fraudulently failed and neglected to sell his rice with reasonable promptness after same had been milled in accordance with the agreement, to his damage in the sum aforesaid.

The first testimony taken in the case was the deposition of the appellee given on the 19th day of May, 1927. From time to time thereafter testimony was taken in the form of depositions down to 1930 or 1931. After all the testimony was in, the appellee filed his motion to amend the complaint to conform to the proof, and on the 7th day of April, 1931, filed an amended complaint in which the allegations of the original complaint were reiterated and the further allegation was made that appellant fraudulently failed to account for 900 bushels of rice, failed to account for the complete proceeds resulting from the sale of the rice, and failed to report the correct amount of mill product, and unlawfully converted a portion of the rice delivered by the appellee to its own use; that, by reason of this unlawful misconduct and fraud, the appellant forfeited its right to compensation of $1 a barrel and the by-products for milling the rice.

To this amended complaint answer was made by the appellant and objections filed to the testimony of the deposition of witnesses B. E. Chaney, George E. Carlson, Oak H. Rhodes, and to parts of the testimony of the appellee. The case was thereupon submitted to the court, and a decree was rendered on May 11, 1931. The court

found, first, "that the rice in controversy was of superior quality for which appellee had been offered $1.10 per bushel prior to delivery to defendant; that J. C. Lloyd was president of the Stuttgart Rice Mill Company; that, as an inducement to plaintiff to deliver rice to defendant, plaintiff was guaranteed a minimum of $1.25 per bushel, and that the president was authorized to negotiate contracts of this kind. Second, the court found that the evidence shows that irregularities and mismanagement on the part of those in charge of defendant mill amount to a fraudulent transaction against the plaintiff; third, that the defendant received from the plaintiff 5,401 bushels of rice; that the rice was delivered upon verbal toll milling agreement with no specific milling charge agreed upon; that the customary milling charge for milling rice was $1 per barrel and by-products; that the defendant retained the by-products and is therefore only entitled to milling charge aforesaid as a credit upon the judgment hereinbefore rendered; that plaintiff is entitled to interest from the 29th day of March, 1921, at the rate of six per cent. per annum from date until paid; fourth, that defendant is entitled to a credit upon the amount guaranteed plaintiff of $2,495.22 for moneys paid him by defendant on or before March 29, 1931, and $1,500.50 toll milling charges on the amount of rice delivered by plaintiff to defendant.

Judgment was rendered for $2,755.53, principal, with interest from the date aforesaid, from which decree both the appellant and the appellee have appealed.

The complaint alleged, and the testimony on the part of the appellee tended to show, that he and one Finch his tenant, each owned a one-half interest in the rice delivered to appellant, the total amount of which was 11,806 bushels, half of which was appellee's part amounting to 5,903 bushels. Both appellee and Finch testified that they weighed and loaded on the cars at Goldman this amount of rice which was shipped to appellant's mill at Stuttgart. The original memorandum of the weights was

asked for and not produced. The explanation given by the appellee for his failure to do so was that he had given them to his lawyer. It was shown on behalf of the appellant that the statement of the rice accounted for was obtained from the records made by the receiving clerk, and that the rice was weighed on the city scales. By the fourth finding of fact the chancellor found against the contention made by the appellee as to shortage in weights, finding the amount of rice received to be 5,401 bushels as shown by the books of the appellant. We are of the opinion that this finding was supported by the evidence.

The first finding of fact made by the chancellor is the one upon which the decree was based. Appellee testified to a certain conversation between himself and J. C. Lloyd, president of the appellant company, occurring 6½ years before, and not in the presence of any other person and after Lloyd, the only one who could testify directly to the contrary, had died. That statement was that at the Arkansas County Bank in Stuttgart "he called me in at the bank and asked me what I could get for my rice, and I told him I could get $1.10 and he told me there was no use to take that. If you will deliver it to the Stuttgart Mill, I will guarantee you $1.25 in thirty days, and it might bring $1.35." I had been offered $1.10 per bushel for my rice by southern mill, and Mr. Lloyd held my note which he had put up with the Arkansas County Bank as collateral. I did not sign any toll milling agreement. After my conversation with Mr. Lloyd, we loaded my rice on the cars at Goldman and shipped it to the Stuttgart Mill.

Oak H. Rhodes, testifying on behalf of the appellee, said in substance that he recalled something being said by Lloyd about Lockridge's rice, and he gained the impression, as he then remembered, that this rice was bought and was not handled under the toll milling contract.

L. H. Harper, who was the shipping clerk in 1920, stated in effect that both he and Lloyd knew that more

of appellee's rice was received than accounted for, and that Lloyd had promised him (Harper) he would correctly settle with appellee and pay him for all his rice.

There was other testimony to the effect that rough rice was selling at the time appellee delivered his at from $1.10 to over $1.25 per bushel, and that there was then a market for rough rice, and that there was no considerable decline in the price until after January 1, 1921.

Finch, the tenant of appellee and owner of one-half the rice, testified that he received $1,000 more money than Lockridge, and he and Lockridge further testified as to a conversation said to have taken place between the appellant's bookkeeper and Lockridge in which the bookkeeper, after an examination of the books, said that he thought the rice would net Lockridge at the rate of $1.27 per bushel.

It is contended by counsel that all of this testimony tends to corroborate the contention of the appellee that the rice was delivered at a guaranteed price, and that the testimony relative to the sale of rice, the excess of amount of money paid Finch over Lockridge, and that relating to the alleged conversation with the bookkeeper, justified the chancellor in the finding that Lockridge's rice was delivered at a guaranteed price.

It is impracticable, without unduly lengthening this opinion, to review and analyze this testimony. We have, however, examined it with care, and cannot assent to the contention made by counsel for the appellee. Clearly the overpayment made to Finch was an error of the bookkeeper in failing to take into consideration an account charged against Finch on the books of the appellant and in failing to deduct the same from the amount due him. As to all the other evidence claimed as corroborative and supporting the contention of appellee, we find the testimony vague and uncertain, general in its nature and inconclusive, as is not strange, when it is a relation from memory of the events occurring some six or seven years in the past.

There are circumstances in evidence not dependent upon human memory which tend strongly to refute the testimony of Lockridge relative to the alleged guaranty of $1.25 per bushel.

He was a member of the Southern Rice Growers' Association, and was bound by the contract of the association with rice mills, known as the "Toll Milling Contract" (*Joy Rice Milling Co.* v. *Brown*, 167 Ark. 205, 268 S. W. 1), under the terms of which the mills were to act as its agent and that of its members in milling and marketing rice, receiving a stipulated price for the milling and certain charges for selling, which charges were recognized and allowed by the chancellor.

A large crop of rice was produced in 1920, and the price of the product broke sharply from the previous high level occasioned by various causes—the large crop, the influx of foreign rice on European markets, and the general deflation in prices in 1920, which is recent history. In order to stabilize prices, the toll milling contracts were entered into between the Rice Growers' Association and the rice mills.

The evidence fails to show the amount of rice appellant had on hand to mill at the time it received appellee's, or that it failed to mill and place on the market appellee's rice as soon as possible. He received payment for his rice by checks issued to him and the Arkansas County Bank in March, 1921, the last being dated March 29, 1921. It appears from the allegations in appellee's complaint and by his testimony that on or about that date the appellant claimed that these checks were in full settlement of all that was due him for his rice. On the reverse side of these checks was a memorandum showing the lot number, the account sales, charges, and net amount for which the checks were drawn. These checks were accepted without protest, and, so far as the record discloses, no demand was made upon the mill for an accounting. It was apparent from the face of the checks that the rice brought far below $1.25 a bushel, and,

if the guaranty was as appellee claimed, he knew then that it had not been complied with, and still he remained silent. He does not claim to have done anything about it for about a year, when he stated he took the matter up with his lawyer, who delayed taking action although often importuned to do so. The fact remains, however, that no action was taken until December, 1923, after Lloyd had died in November preceding, and even then no allegation was made of the guaranty of $1.25 per bushel. It was not until May, 1929, that appellee first made any such claim. We are of the opinion that appellee delivered his rice under the toll milling agreement to be milled and marketed in the usual course of business, and the circumstances do not support the claim of a guaranty of $1.25 per bushel, and there is no evidence of a failure by the appellant to mill and market appellee's rice as speedily as could be done or that it accounted to appellee for a less price than it actually received. The finding of the chancellor therefore (finding No. 1 aforesaid) is against the preponderance of the testimony.

T. A. Patrick, an accountant, whose testimony is not disputed, in checking the account of Lockridge and Finch on the books of the appellant discovered some errors in bookkeeping, a part of which was in favor of the appellant and a part against it, and in the credit for the receipts of a certain grade of rice called "brewers' rice." He prepared a statement of his finding showing that the errors amounted to the sum of $753.68. A part appear to have been errors in extension while the credit given for the brewers' rice was under the mistaken belief of the appellant that it had only to account for brewers' rice at its actual market price on the date it was sold. In June of 1920, however, it seems that the appellant contracted to sell the brewers' rice handled by it from the crop of 1920 at four cents a pound and that brewer's rice obtained from milling the rice of appellee was a part which the appellant delivered under its' contract of June, 1920, and for which it received four cents per

pound. At the time the appellant made the contract for the sale of brewers' rice it had no rice of its own on hand with which to fill the order, and filled it in part by rice received from the appellee which it was to handle as the latter's agent. Lockridge delivered the rice to the appellant to be milled by it and the finished product sold by it for his account, which created the relationship of principal and factor. Therefore, appellant rested under the duty, because of the confidential relationship existing, not to speculate on the product of its principal, but to account for the amount actually received by it, although this was the result of a trade made for its own benefit previous to the receipt of the rice grown in 1920. It cannot be permitted to make a profit in excess of the toll and commission allowed by the toll milling contract. 25 C. J., Factors, § 35, and cases cited in note 28.

The figures arrived at by Patrick, the accountant, are not disputed, and was the joint account of the appellee and his tenant, Finch. Appellee was therefore entitled to receive one-half of the amount found by Patrick from his examination of the books that represented the errors in bookkeeping and the contract price for the brewers' rice sold, with interest at 6 per cent. from the 29th day of March, 1921.

The evidence indicates that about 1923 an investigation was made of the conduct of the persons in charge of the appellant's mill, and that some of these persons were prosecuted, but with what result is not shown. The evidence raises ground for grave suspicion of fraudulent practices over a period of a number of years on the part of those persons, and would indicate that large amounts of rice were fraudulently converted by these persons to their own use, and that the growers of rice in the aggregate were defrauded of large quantities of rice. The testimony, however, as to all of these transactions is vague and uncertain, and, with the exception of the testimony of Harper, fails to establish any fraudulent diversion of

the rice of appellee, to which testimony the chancellor attached no weight, as his finding as to the amount of rice accounted for was in favor of the appellant. His finding therefore "that the evidence shows that irregularities and mismanagement on the part of those in charge of the defendant mill amounted to a fraudulent transaction against the plaintiff" was without evidence to support it.

"Fraud is never presumed, but must be proved, and the burden of proving it is upon the party alleging it. It need not be shown by direct or positive evidence, but may be proved by circumstances. 'Slight circumstances or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results,' are not sufficient evidence. 'They must not be, when taken together and aggregated, when interlinked and put in proper relation to each other, consistent with an honest intent. If they are, the proof of fraud is wanting.' They may be sufficient to excite suspicion, but suspicion is not the equivalent of proof. Circumstances necessary to prove fraud must be such as naturally, logically and clearly indicate its existence." *Bank of Little Rock* v. *Frank,* 63 Ark. 16, at page 22, 37 S. W. 400, 401; *Russell* v. *Brooks,* 92 Ark. 509, 122 S. W. 649; *Dufresne* v. *Paul,* 144 Ark. 87, 221 S. W. 485.

It is unnecessary to pass upon the question of the competency of the testimony of the appellee and other witnesses raised by appellant's motion, for the reason that, treating this testimony as competent, we are of the opinion that, considering it in connection with the other circumstances in proof, it fails to make out appellee's case.

The question was raised by the appellee as to certain depositions having been filed out of time. It is quite evident that the chancellor considered these depositions, and had before him a copy of the same, and that the originals were filed in court before the decree was entered.

From the views expressed, it follows that the decree of the trial court must be reversed, and the cause is remanded with directions to enter a judgment in favor of the appellee for one-half the amount of the discrepancy in the credits he should have received, as shown by the statement of the accountant Patrick.